## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MININNO LAW OFFICE
John R. Mininno, Esq.
475 White Horse Pike
Collingswood, New Jersey 08107
Tel. No. (856) 833-0600
Fax. No. (856) 833-9649
Attorney for Relator Kenneth W. Armstrong

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF NEW JERSEY and NEW YORK, *ex rel*. KENNETH W. ARMSTRONG, <br><br> Plaintiffs and Relator, <br><br> v. <br><br> ANDOVER SUBACUTE AND REHAB CENTER SERVICES ONE, INC.; ANDOVER SUBACUTE AND REHAB CENTER SERVICES TWO, INC, ESTATE OF DR. HOOSHANG KIPIANI; DR. SANJAY JAIN; and DR. BORIS FREYMAN, <br><br> Defendants. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 and Local Rule 5.3** <br><br> Civil Action No.:  12-cv-03319 <br><br> **RELATOR'S FIRST AMENDED FALSE CLAIMS ACT COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

## INTRODUCTION

1.      Plaintiff Kenneth W. Armstrong (the "Relator") brings this *qui tam* action on

behalf of United States of America ("U.S."), the States of New Jersey and New York ("the

States") (the U.S. and the States are sometimes referred to together as ("the Government")

pursuant to the provisions of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"),

and the False Claims Acts of the States against Defendants Andover Subacute and Rehab Center

One, Inc., Andover Subacute and Rehab Center Two, Inc. (together "Andover"), Dr. Hooshang

Kipiani and Dr. Sanjay Jain and Dr. Boris Freyman (henceforth, together, "Defendants") to

recover damages and civil penalties based on the false claims for payment Defendants made and presented, and caused to be made and presented, to the U.S. and the States.

2.     These violations arise out of Defendants' knowing submission of false and fraudulent claims for health care services, and their causing the submission of false and fraudulent claims for the provision of health care services to the U.S. and the States that were either not rendered, not rendered as described and claimed, not medically necessary or not lawfully authorized to be reimbursed by the U.S. or the States, as detailed below.

## FEDERAL JURISDICTION AND VENUE

3.     This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.  This Court has supplemental and pendant jurisdiction over the counts relating to the State of New Jersey False Claims Act, N.J.S.A. § 2A:32C-3(a) and New York False Claims Act, 2007 N.Y. Laws 58, Section 39, Article XIII § 189(a) , pursuant to 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in, reside in or transact business in this District. Additionally, this Court has personal jurisdiction over Defendants because acts prohibited by 31 U.S.C. § 3729 occurred in this District, 31 U.S.C. § 3732(a).

5.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this District and numerous acts proscribed by 31 U.S.C. § 3729 occurred in this District.

## PROCEDURAL ALLEGATIONS

6.     To the extent, if any, that this case is deemed to be a "related action" and to the extent, if any, that facts set forth herein are deemed to be the same as facts underlying an existing

*qui tam* FCA action pending at the time of the filing of this action, as set forth in 31 U.S.C. § 3730(e), said factual allegations in common with any pending action that would cause this case to be a related action are hereby expressly excluded from this action, but only to the limited extent necessary to avoid the statutory preemption.

7.     Furthermore, to the extent that the allegations or transactions set forth herein are the subject of civil suit or an administrative civil money penalty proceeding in which the U.S. is already a party, if any such proceedings exist, then the allegations or transactions referred to herein which are the subject of any such civil suit or administrative civil penalty proceedings are expressly excluded, but only for the specific time periods, specific companies and/or specific allegations or transactions that are already the subject of the civil suit and/or administrative civil money penalty proceeding.

## PARTIES

### RELATOR KENNETH W. ARMSTRONG

8.     Relator Kenneth W. Armstrong is a resident of 15 Vail Drive, Newton, New Jersey 07860, County of Sussex, State of New Jersey.

9.     From August 2002 until October 2011, Relator was employed by Andover as a patient advocate.  From January 2005 to October 2011, Relator also served as director of security for Andover.

10.    In October 2011, Relator was terminated from his employment at Andover on the basis of Andover management's claimed need to reduce costs.

**DEFENDANTS  ANDOVER SUBACUTE AND REHAB CENTER SERVICES ONE,
INC., ANDOVER SUBACUTE AND REHAB CENTER SERVICES TWO, INC., THE
ESTATE OF DR HOOSHANG KIPIANI; DR. SANJAY JAIN AND DR. BORIS
FREYMAN.**

11.     Defendant Andover Subacute and Rehab Center Services One, Inc. ("Andover
One") is a New Jersey for-profit corporation with a business address at 525 Riverside Avenue,
Lyndhurst, New Jersey.

12.     Andover One's President is Carla Turco Kipiani and its Secretary is Jerry Turco,
Jr.  Carla Turco Kipiani and Jerry Turco, Jr. are siblings.

13.     Andover One is the owner of Andover Subacute and Rehabilitation I ("Andover
Nursing Home"),  a New Jersey-licensed Long-Term Care Facility ("LTC") doing business at 1
O'Brien Lane, Andover, New Jersey.

14.     Andover Nursing Home is a 159-bed facility.  Its patient population is comprised
mainly of the elderly. The administrator of the Andover Nursing Home is Sonia Velmonte.

15.     Defendant Andover Subacute and Rehab Center Services Two, Inc. ("Andover
Two") is a New Jersey for-profit corporation with a business address at 525 Riverside Avenue,
Lyndhurst, New Jersey.

16.     Andover Two's President is Carla Turco Kipiani and its Secretary is Jerry Turco,
Jr.

17.     Andover Two is the owner of Andover Subacute and Rehabilitation II ("Andover
Rehab"),  a New Jersey-licensed Long-Term Care Facility ("LTC") doing business at 99 Mulford
Road, Andover, New Jersey.

18.     Andover Rehab has 543 long-term care beds.  Approximately 70% of the patients
in Andover Rehab suffer from "behavioral" or "long-term psychiatric illness" requiring
institutionalization. Most of the remaining patients in Andover Rehab suffer from Alzheimer's

4

disease, other types of dementia or are sub-acute patients with limited alternatives. The administrator of Andover Rehab is Cynthia Bradford.

19.     Andover Nursing Home and Andover Rehab are referred to collectively hereafter as "the Andover facilities."

20.     From 1964 until his death in 1962 Dr. Hooshang Kipiani ("Dr. Kipiani") was a licensed physician authorized to practice medicine in New Jersey.

21.     Dr. Kipiani was the husband of Andover One and Two's president, Carla Turco Kipiani.

22.     Beginning at least as early as August 2002 until his death, Dr. Kipiani served as the Andover facilities' full-time Medical Director.  As of October 2011, Dr. Kipiani was also the attending physician for an estimated 300 patients at the Andover facilities.

23.     As of October 2011, Defendants Dr. Sanjay Jain andDr. Boris Freyman were each physicians practicing in Hackettstown, N.J.  Together, they were were also the attending physicians for an estimated 100 patients at the Andover facilities.

24.     The Andover facilities house and provide medical care to patients that are residents of the States of New Jersey and New York and who are also Medicaid beneficiaries of these States.

## STATUTORY AND REGULATORY BACKGROUND

25.     Medicaid is a federal health insurance system administered by the States and is available to low-income individuals and families that meet eligibility requirements determined by federal and State law. Medicaid pays for items and services pursuant to plans developed by the States and approved by the U.S. Department of Health and Human Services ("HHS") through the Centers for Medicare and Medicaid Services ("CMS"). See 42 U.S.C. §§ 1396a(a)-(b). States

pay health care providers according to established rates; thereafter, the federal government reimburses the States a statutorily established share of "the total amount expended … as medical assistance under the States' plan." See 42 U.S.C. §§ 1396b(a)(1).  In this matter Medicaid primarily pays Andover a per diem rate for patients who receive residential care at either of the Andover facilities.

26.     Medicare was established in 1965 as part of the Social Security Act of 1965, 42 U.S.C. §§ 1395 *et seq.* ("Act"), to provide a federally funded health insurance program for the aged and disabled. HHS administers Medicare though CMS.

27.     In this matter,  Medicare pays for non-routine medical care for patients at the Andover facilities, including physician services, which are central to the allegations herein. Upon information and belief, Medicare also pays Andover a portion of the per diem rate for patients who receive residential care at either of the Andover facilities.

28.     Most patients at the Andover facilities are beneficiaries of Medicare, Medicaid, or both, depending on the nature of their disabilities, needs and deficits, and the nature of the health care services needed to care for them, in addition to other criteria

29.     The Act mandates that LTC nursing facilities, such as the Andover facilities, which participate in the Medicare and Medicaid programs, meet certain specific requirements to qualify for such participation. These requirements are set forth at 42 C.F.R. §§ 483.1, *et seq.,* and "serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements of participation in Medicare and Medicaid." 42 U.S.C. § 483.1.

30.     Compliance with the specific requirements of 42 C.F.R. §§ 483.1, *et seq.*, is a condition of federal funding.  Among other things, to receive federal funding, a facility must provide the basic services enumerated in 42 C.F.R. §§ 483.1, *et seq.,* including a quality of care

necessary "to attain or maintain the highest practicable physical, mental, and psychosocial well being [of the patient]. . . ." 42 C.F.R. § 483.25.

31.    Thus, in order to participate in the Medicare and Medicaid programs and to be eligible to receive payments from these programs, directly or indirectly, LTCs like the Andover facilities must execute an agreement with HHS to abide by the conditions of participation in the Medicare and Medicaid programs. See 42 U.S.C. § 1395cc; 42 C.F.R.  483.1 *et. seq.*

32.    Among other things, LTCs, such as the Andover facilities, must provide quality assurance, utilization review, physician services, nursing services and pharmacy services to comply with the requirements of 42 C.F.R. §§ 483.1, 483.30, 483.40, 483.60 and 483.75.

33.    The FCA, a civil statute, imposes liability for treble damages and civil penalties on anyone who "knowingly presents, or causes to be presented [to the U.S.] a false ... claim for payment or approval." 31 U.S.C. § 3729(a)(1). The definition of "knowingly" includes acting in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. *Id.* § 3729(b). In addition, the U.S. may seek up to $11,000 [check] in penalties for each false claim. *Id.* § 3729(a); 28 C.F.R. § 85.3(a)(9).

34.    The Medicare and Medicaid programs are hereinafter referred to as "Government Healthcare Programs."

35.    As detailed below, Drs. Kipiani, Jain and Dr. Boris Freyman  ( "the Doctors") knowingly submitted, and/or caused to be submitted, false claims to Government Healthcare Programs for physician services that were not provided, the provision of such services being a condition of payment or reimbursement by Government Healthcare Programs.

36.    Similarly, as detailed below, Andover knowingly submitted, and/or caused to be submitted, false claims to Government Healthcare Programs for per diem residential care for

skilled nursing services that were not eligible for payment or reimbursement, as described with particularity below.

### SPECIFIC ALLEGATIONS RELATED TO ANDOVER, THE ESTATE OF DR. KIPIANI, DR. JAIN AND/OR DR. FREYMAN

37.     As detailed below, beginning at least as early as 2004 and continuing until at least October 2011 and, upon information and belief, from October 2011 up to and including at least March 2012, Defendants, as well persons acting under their direction and control, have unlawfully implemented a scheme to fraudulently bill Government Healthcare Programs by (a) the submission by the Doctors of false claims to Government Healthcare Programs for physician services to patients at Andover that were not provided or not provided as described; and (b) the submission of false claims by Andover for extended care without ensuring that patients received the necessary physician services required by 42 C.F.R. § 483.40, *et seq.*

38.     In order to receive reimbursement for care provided to Governmental Healthcare Program beneficiaries, Andover is mandated by federal regulations to provide its residents with periodic "physician visit[s]."42 C.F.R. § 483.40(b). In addition, "[e]ach resident [of an LTC] must remain under the care of a physician," 42 C.F.R. § 483.40, and "[t]he facility must ensure that -- (1) [t]he medical care of each resident is supervised by a physician; and [that] (2) [a]nother physician supervises the medical care of residents when their attending physician is unavailable." 42 C.F.R. § 483.40(a). "The intent of this regulation is to ensure the medical supervision of the care of nursing home residents by a personal physician." 42 C.F.R. § 483.40.

39.     At all times relevant herein, Dr. Kipiani prior to his death was employed by Andover, both as its Medical Director and as a physician.

40.      As the attending physician to numerous patients at Andover, Dr. Kipiani was required to provide physician services, including physician visits mandated by 42 C.F.R. § 483.40 to his Andover patients.

41.      At all times relevant herein, Dr. Jain was a private practice physician. As the attending physician to numerous patients at Andover, Dr. Jain was required to provide physician services, including physician visits mandated by 42 C.F.R. § 483.40 to his Andover patients.

42.      Although Medicare and/or Medicaid per diem payments to Andover are conditioned upon Andover providing each resident with periodic physician visits on a defined schedule (see 42 C.F.R. § 483.40), it is Medicare that ultimately pays the physician or his employer for a physician visit with a patient who is a Medicare beneficiary

43.      Physician visits have two phases: (a) a chart review phase during which the physician reviews the patient's chart for recent medical history and complaints, medication orders and other pertinent medical data and (b) a patient encounter phase during which the physician personally sees and evaluates the patient.

44.      During the chart review phase of a physician visit, the physician is required to "(1) [r]eview the resident's total program of care, including medications and treatments...;  (2) [w]rite, sign, and date progress notes…; and (3) [s]ign and date all orders...."  42 C.F.R. § 483.40(b).

45.      During the patient encounter phase of a physician visit, the patient "must be seen" by the physician.  42 C.F.R. § 483.40(c).  "Must be seen" means the physician "must make actual face-to-face contact with the resident." Interpretive Guidelines § 483.40(c).  Although, after the first visit, the required patient visits may "alternate between personal visits by the physician and visits by a physician assistant, nurse practitioner, or clinical nurse specialist," 42

C.F.R. § 483.40(c)(4), Andover did not engage personnel qualified to assume responsibility for alternating the required visits by physicians.

46.     On information and belief, as described below, in detail, the Doctors routinely performed fraudulent chart reviews and engaged in non-existent, or "phantom," patient encounters with their assigned patients at Andover.

47.     On information and belief, the Doctors arranged to have "phantom" visits with their Andover patients on a 30-day cycle.

48.     When scheduling and performing the chart view phase of a patient visit, Relator observed the Doctors follow a customary routine or procedure, with theaid and assistance of Andover staff.

49.     On the days when one or more of the Doctors was scheduled to conduct patient visits at Andover, a staff member would prepare a list of the patients who had not been "seen," according to Andover's patient charting records, by one or the other of the physicians in the past 30 days. Using this list, the charts of all such patients visit would be pulled by nursing supervisors, unit (floor) clerks) or other staff, placed on a cart and wheeled into the office or other room the doctor would be using that day.

50.     Before one of the Doctors received a patient chart, a nursing supervisor, unit (floor) clerk) or other staff member, using office "sticky" or "PostIt" notes, would "flag" the specific pages of each patient chart that was required to be initialed or signed by a physician.

51.     After arriving at the facility, the Doctors (separately) would go through their patients' charts, initialing or signing the flagged pages, including any previous verbal orders, any "consults" performed since the last patient visit by a specialist and any reports of laboratory tests performed.  Once this operation has been completed, the charts would be collected by Andover

10

staff and re-filed.  In Dr. Kipiani's case, after chart review, he then usually had lunch at the facility with Dr. Robert Mayer, Sr., the staff pharmacist, before leaving for the day.

52.     While employed by Andover, Relator observed each of the Doctors follow the above-described procedure for the chart review phase of their "physician visits."   Relator further has confirmed with staff at Andover that this procedure remained in place through at least March 2012.

53.     As for the patient encounter phase, upon information and belief, as well as personal observation, most physicians with patients at Andover, other than the Doctors usually spend from 15 to 45 minutes with their patients during the patient encounter phase of a patient visit and then take the time to pen a progress note documenting the encounter in the patient's chart.

54.     Upon information and belief, as well as personal observation, the Doctors rarely see any of their Andover patients. Instead, as detailed above, they fraudulently completed a progress note on the patient's chart indicating, falsely, that a patient encounter took place.

55.     Upon information and belief, as well as personal observation, typically, the only times any of the Doctors see their Andover patients is when there is a clear medical necessity or an alert patient has made persistent requests.

56.     Pursuant to Government Healthcare Program requirements, in order to be paid for a patient visit (covering both the chart review phase and the patient encounter phase), the physician, or a person acting under the physician's direction, must submit a claim for payment to the appropriate Governmental Healthcare Program, or fiscal intermediary, on a CMS-1500 form. This form is generally submitted electronically. As completed, the CMS-1500 must contain

sufficient information for the approving agency to determine whether payment is due and, if so, in what amount. 42 C.F.R. § 424.5(a)(5)-(6); 42 C.F.R. § 424.32.

57.     As detailed above, although the Doctors typically do not actually see any of their Andover patients at the time of their claimed "patient visits," in order to be paid for the "phantom" service they provide, the Doctors thereafter submit, and cause to be submitted, false and fraudulent CMS-1500 forms to the relevant Government Healthcare Program, or fiscal intermediary, claiming that they conducted a patient visit, although, in truth, they did not.

58.     Upon information and belief, beginning at least as early as 2004, up to and including at least March 2012, the Doctors, with the knowledge, acquiescence, assistance and active assistance of Defendant Andover, have routinely and systematically submitted, and caused to be submitted, to Government Healthcare Programs, or their fiscal intermediaries, false claims certifying that they had performed required patient visits when, in fact, they had not.

59.     Upon information and belief, as a general matter, an Andover director of admissions, Adele Primiano, prior to the death of Dr. Kipiani, pursuant to his instruction, and, upon information and belief, with full knowledge of Andover's management, would complete the CMS-1500 form for Dr. Kipiani's patients to show that a patient visit occurred, inserting on the CMS-1500 the required billing code, and would submit the false claim for payment to the appropriate Government Healthcare Program, or its fiscal intermediary.

60.     Upon information and belief, the fraudulent patient visit billing scheme, as described above, is well-known to management, nurses and other staff at Andover.

**COUNT ONE**
**(VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(A)) -THE**
**ESTATE OF DR. KIPIANI, DR. JAIN AND DR. FREYMAN**

61.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

62.     On information and belief, the Doctors knowingly presented, or caused to be presented, false and fraudulent claims for services that were either not rendered, not rendered as described and claimed, not medically necessary or were not eligible for reimbursement for payment or approval to the Governmental Healthcare Programs, in violation of 31 U.S.C. § 3729(a)(1)(A).

63.     Said false and fraudulent claims were presented with the actual knowledge by the Doctors of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

64.     The U.S. relied on these false and fraudulent claims, were ignorant of the truth regarding these claims and would not have paid Defendants for these false and fraudulent claims had they known the falsity of the said claims.

65.     As a direct and proximate result of the false and fraudulent claims made by Defendants, the U.S. has suffered damages and therefore are entitled to  recovery as provided by the FCA for each such violation.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this Complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*., provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT TWO
### (VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(B)) -THE ESTATE OF DR. KIPIANI , DR. JAIN AND DR. FREYMAN AND DR. FREYMAN

66.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

67.     On information and belief, the Doctors knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the Governmental Healthcare Programs, in violation of 31 U.S.C. § 3729(a)(1)(B).

68.     The Doctors knowingly used false records or false statements that were material, and on information and belief continue to be material, to the false and fraudulent claims for payments they made to the U.S. for reimbursements and benefits.

69.     The Doctors' materially false records or false statements are set forth above and include, but are not limited to false claims and/or bills for payment that explicitly and/or impliedly attested that their patients were eligible to receive long-term care services when in fact they were ineligible or billed for ineligible services

70.     These said false records or false statements were made, used or caused to be made or used, with the Doctors' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

71.     As a direct and proximate result of the false and fraudulent claims made by Defendants, the U.S. has suffered damages and therefore is entitled to recover as provided by the FCA for each such violation.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT THREE
## (VIOLATION OF THE FALSE CLAIMS ACT -- CONSPIRACY TO SUBMIT FALSE CLAIMS 31 U.S.C. § 3729(a)(1)(C)) -THE ESTATE OF DR. KIPIANI , DR. JAIN AND DR. FREYMAN AND DR. FREYMAN AND ANDOVER

72.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

73.     Defendant Andover conspired and agreed with the Doctors to defraud Governmental Healthcare Programs as alleged in Count One and Count Two above.

74.     As a direct and proximate result of the false and fraudulent claims made by Defendants, the U.S. has suffered damages and therefore are entitled to recovery as provided by the FCA for each such violation.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT FOUR
## (VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(A)) BY ANDOVER

75.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

76.     On information and belief, Andover knowingly presented, or caused to be presented, false and fraudulent claims for services that were not eligible for reimbursement for payment or approval to the Governmental Healthcare Programs in violation of 31 U.S.C. § 3729(a)(1)(A).

77.     Said false and fraudulent claims were presented by Andover with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

78.   The U.S. relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid defendants for these false and fraudulent claims had it known the falsity of the said claims by defendants.

79.   As a direct and proximate result of the false and fraudulent claims made by Defendants, the U.S. has suffered damages and therefore are entitled to recover as provided by the FCA for each such violation.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)   That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)   That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)   That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)   That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)   That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)   That this Court award such other and further relief as it deems proper.

## COUNT FIVE
## (VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(B)) ANDOVER

80.   Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

81.   On information and belief, Andover knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the Governmental Healthcare Programs in violation of 31 U.S.C. § 3729(a)(1)(B).

82.     Andover knowingly used false records or false statements that were material, and on information and belief continue to be material, to the false and fraudulent claims for payments they made to the U.S. for reimbursements and benefits.

83.     Andover's materially false records or false statements are set forth above and include, but are not limited to false claims and/or bills for payment that explicitly and/or impliedly attested that their patients were eligible to receive long-term care services when in fact they were ineligible or billed for ineligible services

84.     These said false records or false statements were made, used or caused to be made or used, with Andover's actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

85.     As a direct and proximate result of the false and fraudulent claims made by Defendants, the U.S. has suffered damages and therefore are entitled to recovery as provided by the FCA for each such violation.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

18

## COUNT SIX
## (VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT -- N.J.S.A. § 2A:32C-3(a)) - THE ESTATE OF DR. KIPIANI , DR. JAIN AND DR. FREYMAN AND DR. FREYMAN

86.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

87.     The Doctors knowingly presented, or caused to be presented, and, in the case of Drs. Jain and Freyman continue to present or cause to be presented, false and fraudulent claims for payment or approval to the State of New Jersey in violation of N.J.S.A. § 2A:32C-3(a).

88.     Said false and fraudulent claims were presented with the Doctors' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

89.     The State of New Jersey relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Defendants for these false and fraudulent claims had it known the falsity of the said claims by Defendants.

90.     As a direct and proximate result of the false or fraudulent claims, the State of New Jersey suffered damages and therefore is entitled to recover from the Doctors treble damages under the New Jersey False Claims Act, in an amount to be proved at trial, plus a civil penalty of not less than and not more than the civil penalty allowed under the New Jersey False Claims Act.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

      (a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

      (b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

      (c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

      (d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT SEVEN
## VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT -- N.J.S.A. § 2A:32C-3(b)) - THE ESTATE OF DR. KIPIANI , DR. JAIN AND DR. FREYMAN AND DR. FREYMAN

91.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

92.     On information and belief, the Doctors knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the State of New Jersey, in violation of N.J.S.A. § 2A:32C-3(b).

93.     The Doctors' knowingly false records or false statements were material, and on information and belief continue to be material, to the false and fraudulent claims for payments they made to the State of New Jersey for Medicaid reimbursements and benefits.

94.     The Doctors' materially false records or false statements are set forth above and include, but are not limited to false claims and/or bills for payment that explicitly and/or impliedly attested that their patients were eligible to receive long-term care services.

95.     These said false records or false statements were made, used or caused to be made or used, with the Doctors' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

96.     As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by the Doctors, the State of New Jersey has suffered damages and therefore is entitled to recovery as provided by the New Jersey False Claims Act in

an amount to be determined at trial, plus a civil penalty of not less than and not more than the civil

penalty allowed under the New Jersey False Claims Act.

WHEREFORE, Relator respectfully requests this Court to enter judgment against

Defendants, as follows:

> (a)     That the U.S. be awarded damages in the amount of three times the
> damages sustained by the U.S. … because of the false claims and fraud alleged
> within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;
> (b)     That civil penalties of $11,000 be imposed for each and every false
> claim that defendant presented to the United States;
> (c)     That pre- and post-judgment interest be awarded, along with
> reasonable attorneys' fees, costs and expenses which the Relator necessarily
> incurred in bringing and pressing this case;
> (d)     That the Court grant permanent injunctive relief to prevent any
> recurrence of the FCA for which redress is sought in this complaint;
> (e)     That the Relator be awarded the maximum amount allowed to him
> pursuant the FCA; and
> (f)     That this Court award such other and further relief as it deems
> proper.

## COUNT EIGHT
## VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT -- CONSPIRACY TO SUBMIT FALSE CLAIMS. N.J.S.A. § 2A:32C-3(c)) BY THE DOCTORS AND ANDOVER

97.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint

set forth above as if fully set forth herein.

98.     Defendant Andover conspired and agreed with the Doctors to defraud

Governmental Healthcare Programs as alleged in Count One and Count Two above.

99.     As a direct and proximate result of this conspiracy, U.S. and States have suffered

damages and therefore are entitled to recovery as provided by the FCA in an amount to be

determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the FCA.

WHEREFORE, Relator respectfully requests this Court to enter judgment against

Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq.* provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT NINE
## (VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT -- N.J.S.A. § 2A:32C-3(a))
## BY ANDOVER

100.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

101.     On information and belief, Andover knowingly presented, or caused to be presented, false and fraudulent claims for services that were not eligible for reimbursement for State of New Jersey for Medicaid reimbursements in violation of N.J.S.A. § 2A:32C-3(a).

102.     Said false and fraudulent claims were presented by Andover with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

103.     The U.S. and States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid defendants for these false and fraudulent claims had it known the falsity of the said claims by Defendants.

104.     As a direct and proximate result of the false or fraudulent claims made by Andover, the State of New Jersey suffered damages and therefore is entitled to recover from Andover treble damages under the New Jersey False Claims Act, in an amount to be proved at trial, plus a civil

penalty of not less than and not more than the civil penalty allowed under the New Jersey False

Claims Act.

WHEREFORE, Relator respectfully requests this Court to enter judgment against

Defendants, as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)     That this Court award such other and further relief as it deems proper.

## COUNT TEN
## VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT -- N.J.S.A. § 2A:32C-3(b))
## BY ANDOVER

105.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

106.     On information and belief, Andover knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the State of New Jersey, in violation of N.J.S.A. § 2A:32C-3(b).

107.     Andover's knowingly false records or false statements that were material, and on information and belief continue to be material, to the false and fraudulent claims for payments they made to the State of New Jersey for Medicaid reimbursements and benefits.

108.    Andover's materially false records or false statements are set forth above and include, but are not limited to false claims and/or bills for payment that explicitly and/or impliedly attested that their customers were eligible to receive long term care services.

109.    These said false records or false statements were made, used or caused to be made or used, with Andover's actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

110.    As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Andover the State of New Jersey has suffered damages and therefore is entitled to recovery as provided by the New Jersey False Claims Act in an amount to be determined at trial, plus a civil penalty of not less than and not more than the civil penalty allowed under the New Jersey False Claims Act.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

(a)    That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. … because of the false claims and fraud alleged within this complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq*. provides;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that defendant presented to the United States;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this complaint;

(e)    That the Relator be awarded the maximum amount allowed to him pursuant the FCA; and

(f)    That this Court award such other and further relief as it deems proper.

**COUNT ELEVEN**
**VIOLATION OF THE NEW YORK FALSE CLAIMS ACT -- 2007 N.Y. Laws 58, Section**
**39, Article XIII § 189(a)**

111.    Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth.

112.    On information and belief, Andover knowingly presented, or caused to be presented, false and fraudulent claims for services that were not eligible for reimbursement for payment or approval to the Governmental Healthcare Programs in violation of New York False Claims Act, 2007 N.Y. Laws 58, Section 39, Article XIII § 189(a).

113.    Said false and fraudulent claims were presented by Andover with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

114.    The State of New York relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid defendants for these false and fraudulent claims had it known the falsity of the said claims by Defendants.

115.    As a direct and proximate result of the false or fraudulent claims made by Andover, the State of New York suffered damages and therefore is entitled to recover from Andover treble damages under the New York False Claims Act, in an amount to be proved at trial, plus a civil penalty of not less than and not more than the civil penalty allowed under the New York False Claims Act.

        WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

        To the STATE OF New York:

    (1)      Three times the amount of actual damages which the State of New York has sustained as a result of Defendant's conduct;

    (2)      A civil penalty Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New York;

    (3)      Prejudgment interest; and

    (4)      All costs incurred in bringing this action.

To RELATOR:

    (1)      The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section 39, Article XIII, and/or any other applicable provision of law;

    (2)      Reimbursement for reasonable expenses which Relator incurred in connection with this action;

    (3)      An award of reasonable attorneys' fees and costs; and

    (4)      Such further relief as this Court deems equitable and just.

**COUNT TWELVE**
**VIOLATION OF NEW YORK FALSE CLAIMS ACT, 2007 N.Y. Laws 58, Section 39,**
**Article XIII § 189(b) BY ANDOVER**

116.    Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

117.    On information and belief, Andover knowingly presented, or caused to be presented, false and fraudulent claims for services that were not eligible for reimbursement for payment or approval to the Governmental Healthcare Programs in violation of New York False Claims Act, 2007 N.Y. Laws 58, Section 39, Article XIII § 189(b).

118.    Said false and fraudulent claims were presented by Andover with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

119.    The State of New York relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Defendants for these false and fraudulent claims had it known the falsity of the said claims by Defendants.

120.     As a direct and proximate result of the false or fraudulent claims made by

Andover, the State of New York suffered damages and therefore is entitled to recover from

Andover treble damages under the New York False Claims Act, in an amount to be proved at

trial, plus a civil penalty of not less than and not more than the civil penalty allowed under the

New York False Claims Act.

WHEREFORE, Relator respectfully requests this Court to enter judgment against

Defendants, as follows:

To the STATE OF New York:
(1)     Three times the amount of actual damages which the State of New York
        has sustained as a result of Defendant's conduct;
(2)     A civil penalty Relator incorporates by reference and re-alleges all
        paragraphs of this Complaint set forth above as if fully set forth herein of
        not less than $5,000 and not more than $10,000 for each false claim which
        Defendant caused to be presented to the State of New York;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To RELATOR:
(1)     The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section
        39, Article XIII, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator incurred in
        connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
**(4)     Such further relief as this Court deems equitable and just.**

## JURY DEMAND

Pursuant to Rule 38, Plaintiff demands a trial by jury on all Counts.

**MININNO LAW OFFICE**
Attorney for the Plaintiff/Relator

_____
John R. Mininno, Esquire  (JRM 7223)

Dated: 10/5/16

OF COUNSEL

A. Hays Gorey, Jr., Esquire
GeyerGorey LLP
1220 L Street, NW
Ste 100, #418
Washington, D.C. 20005-4018
hays.gorey@geyergorey.com
Phone: (202) 466-8732

MININNO LAW OFFICE

_____   10/5/16
John R. Mininno, Esquire (JRM-7223)
475 White Horse Pike
Collingswood, NJ 08107
(856) 833-0600 (phone)
(856) 833-9649 (fax)
(856) 261-0162 (cell)
Counsel for Plaintiff/Relator