UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH ARMSTRONG, ex rel. UNITED STATES OF AMERICA, et al.,<br><br>Plaintiffs,<br>v.<br><br>ANDOVER SUBACUTE AND REHAB CENTER SERVICES ONE, INC. et al.,<br><br>Defendants. | Civil Action No.<br>2:12-cv-3319-SDW-SCM<br><br>**OPINION AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE AMENDED COMPLAINT**<br><br>[D.E. 50] |

**STEVEN C. MANNION**, United States Magistrate Judge.

Before the Court is Relator Kenneth Armstrong's ("Mr. Armstrong") motion for leave to file a second amended complaint.[1] Defendants Andover Subacute and Rehab Center Services One, Inc., ("Andover One") Andover Subacute and Rehab Center Services Two, Inc., ("Andover Two," collectively "Andover") and the Estate of Dr. Hooshang Kipiani ("Dr. Kipiani") have opposed the motion.[2] Defendant Dr. Sanjay K. Jain ("Dr. Jain") joined that opposition[3] and Mr. Armstrong replied.[4] The Court has reviewed the parties' respective submissions and decides the motion without oral argument. For the reasons set forth herein, Mr. Armstrong's motion to amend is **GRANTED**.

---

[1] (ECF Docket Entry ("D.E.") 50, Mot. to Amend). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page number assigned by the Electronic Case Filing System.

[2] (D.E. 50-3, Defs.' Opp'n).

[3] (D.E. 53, Def. Dr. Jain's Opp'n).

[4] (D.E. 50-4, Pl.'s Reply).

I.     **BACKGROUND AND PROCEDURAL HISTORY**[5]

This *qui tam* action arises from allegations that all of the defendants knew and submitted false and fraudulent claims for health care services to the United States and to the states of New York and New Jersey for unnecessary medical claims.[6] Andover employed Mr. Armstrong from August 2002 until October 2011, first as a patient advocate and later as director of security.[7] Andover terminated Mr. Armstrong's employment due to the management's claimed need to reduce costs.[8] Mr. Armstrong filed his initial complaint on June 1, 2012.[9] On September 30, 2013, the United States applied for an Order staying the action so that it may have sufficient time to investigate the matter and decide whether to intervene,[10] and the Court subsequently administratively terminated the case..[11] In June 2017, the United States intervened in the action in part for settlement purposes as to defendant, Dr. Boris Freyman, and declined to intervene as to the other defendants.[12] The case was reopened in September of 2017.

---

[5] The Court relies upon the allegations set forth within the pleadings and motion record for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[6] (D.E. 12, Am. Compl., at ¶ 2).

[7] (D.E. 12, Am. Compl., at ¶ 9).

[8] (D.E. 12, Am. Compl., at ¶ 10).

[9] (D.E. 1, Compl.).

[10] (D.E. 8).

[11] (D.E. 50-1, Second Am. Compl., at ¶ 8).

[12] (D.E. 13).

In June of 2018, Andover and Dr. Kipiani filed a motion to dismiss.[13] Mr. Armstrong filed a motion to amend complaint in response.[14] The parties agreed to meet and confer regarding Mr. Armstrong's proposed amendments, and Andover and Dr. Kipiani withdrew their motion to dismiss without prejudice, and the motion to amend was administratively terminated pending the meet and confer.[15] After Mr. Armstrong's unsuccessful attempt at consent or stipulation to a second amended complaint, he filed this motion.[16] Mr. Armstrong is seeking to amend by adding several facts which outline the alleged scheme and implicate the Andover facility in the scheme.[17] Andover and Dr. Kipiani argue that although Mr. Armstrong's proposed pleading alleges that Andover knew and submitted false claims to the government, it is futile and fails to specify a single example of false billing by Andover.[18] The defendants argue that additional factual allegations regarding Drs. Kipiani and Jain fail to allege a scheme in which Andover participated, and therefore Andover cannot be held liable.[19]

The defendants additionally argue undue delay to deny leave to amend.[20] They argue that Mr. Armstrong should not be able to add allegations about specific conduct that he did not include

---

[13] (D.E. 27).

[14] (D.E. 34).

[15] (D.E. 40 and 42).

[16] (D.E. 50-4, Pl.'s Reply, at 1).

[17] (D.E. 50-2, Redlined Second Am. Compl.).

[18] (D.E. 50-3, Defs.' Opp'n, at 2).

[19] (D.E. 50-3, Defs.' Opp'n, at 2).

[20] (D.E. 50-3, Defs.' Opp'n, at 9).

in his first complaint over seven years ago.[21] Andover has since sold their assets and no longer operate these facilities, meaning they no longer have access to medical records these new allegations may require.[22] Finally, Andover argues that Mr. Armstrong took over seven months since the Court unsealed the initial amended complaint to serve Andover.[23]

Mr. Armstrong responded that he is not required to give specific examples and that the second amended complaint does in fact allege a claim.[24] Mr. Armstrong contends, regarding the undue delay, that although the matter was sealed, the Court must find good cause as to why Mr. Armstrong delayed service on the first amended complaint.[25] The Court gave the defendants an additional 30 days to answer, and Mr. Armstrong cross moved with this motion in a timely fashion.[26] Since then, Mr. Armstrong argues, the parties have been following the Court's advised procedures for amendments to pleadings.[27]

## II. MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[28] This District has specified that magistrate judges may determine any non-dispositive pre-

---

[21] (D.E. 50-3, Defs.' Opp'n, at 9).

[22] (D.E. 50-3, Defs.' Opp'n, at 10).

[23] (D.E. 50-3, Defs.' Opp'n, at 10).

[24] (D.E. 50-4, Pl.'s Reply, at 2).

[25] (D.E. 50-4, Pl.'s Reply, at 7).

[26] (D.E. 50-4, Pl.'s Reply, at 7).

[27] (D.E. 50-4, Pl.'s Reply, at 7).

[28] 28 U.S.C. § 636(b)(1)(A).

trial motion.[29] Motions to amend are non-dispositive.[30] Decisions by magistrate judges must be upheld unless "clearly erroneous or contrary to law."[31]

### III. LEGAL STANDARD

After amendments as of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[32] The decision to grant or deny leave to amend is "committed to the sound discretion of the district court."[33] While courts have broad discretion to decide motions to amend, they are to "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice."[34] This ensures that "a particular claim will be decided on the merits rather than on technicalities."[35] In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the Court must grant a request for leave to amend.[36]

Under the False Claims Act, a party is liable if they knowingly present, or cause to be presented, "a false or fraudulent claim for payment or approval" or "a false record or statement material to a false or fraudulent claim."[37] The Third Circuit adopted the First, Fifth, and Ninth

---

[29] L. Civ. R. 72.1(a)(1).

[30] *Continental Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3rd Cir. 1998) (citations omitted).

[31] 28 U.S.C. § 636(b)(1)(A).

[32] Fed. R. Civ. P. 15(a)(2).

[33] *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

[34] Fed. R. Civ. P. 15(a)(2); *Voilas et al. v. General Motors Corp., et al.*, 173 F.R.D. 389, 396 (D.N.J. 1997) (citations omitted) (internal quotations omitted).

[35] *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (citation omitted).

[36] *Grayson v. Mayview State Hosp.,* 292 F.3d 103, 108 (3d Cir. 2002).

[37] 31 U.S.C. § 3729(a)(1)(A)–(B).

Circuit's standard to determine what Rule 9(b) requires of a False Claims Act claimant in the pleading stage.[38] This requires that "it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'"[39]

"There are two categories of false claims under the False Claims Act: a factually false claim and a legally false claim."[40] A factually false claim misrepresents the goods or services provided to the Government.[41] A legally false claim, however, is "when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment."[42]

Legally false claims are based on false certification theories of liability: express false certification and implied certification.[43] In an express false certification, "an entity is liable under the [False Claims Act] for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds."[44] Under an implied false certification theory, "a claimant seeks and makes a claim for payment from

---

[38] *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155–57 (3d Cir. 2014).

[39] *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009); *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010).

[40] *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (quoting *U.S. ex rel. Connor v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008)).

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* (quoting *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2008)).

the Government without disclosing that it violated regulations that affected its eligibility for payment; thus, implying compliance with federal rules."[45]

The Third Circuit has adopted the implied false certification theory of liability with a few conditions.[46] The claimant must allege, in addition to allegations of receipt of federal funds and failure to comply with regulations, that the payment of the federal funds was conditioned on compliance with the regulations.[47] The claimant must show that if the Government knew of the defendant's violations of laws and regulations, it would not have paid the claims.[48] The Supreme Court added that the misrepresentation of compliance must be material to the Government's payment decision.[49]

## IV. **DISCUSSION**

Defendants' main argument is that the proposed amendment is futile and does not allege a cause of action against the Andover facilities.[50] The proposed second amended complaint, however, does provide allegations of a particular scheme sufficient enough to lead to a strong inference that claims were submitted under both the express and implied theories of liability.

---

[45] *Id.*

[46] *ex rel. Wilkins*, 659 F.3d at 306–07.

[47] *Id.* at 307 (quoting *Rodriguez*, 552 F.3d at 304).

[48] *Id.*

[49] *Universal Health Servs. V. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016).

[50] *See* (D.E. 50-3, Defs.' Opp'n, at 2).

The proposed second amended complaint thoroughly details the scheme as it relates to Drs. Jain and Kipiani.[51] Relator further complies with Rule 9(b)'s requirement of particularity by dictating how Andover organized the scheme.[52] For example, Andover submitted false *per diem* claims by charging Medicaid each day a doctor was at the facility, even if the doctor did not see the patient.[53] According to the amended complaint, patients who were supposed to be under the care of Dr. Kipiani and Dr. Jain were not seen by the physicians.[54] Andover's Director of Operations, Robert Mayer, personally knew that Dr. Kipiani and Dr. Jain were not seeing their patients. Mr. Mayer nonetheless authorized Andover to submit *per diem* claims to Medicaid for these patients.

To receive these *per diem* payments from Medicaid, Andover signed several contracts with federal and state governments.[55] In these "Provider Agreements," Andover agreed to comply with state and federal Medicaid regulations, laws, and policies.[56] The Provider Agreement contracts bind Andover to comply with such regulations.[57] Andover's submissions of *per diem* claims for visits that the doctors never actually performed would be considered legally false claims under the

---

[51] (D.E. 50-2, Redlined Second Am. Compl., at ¶¶ 38–89).

[52] (D.E. 50-2, Redlined Second Am. Compl., at ¶¶ 90–119).

[53] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 91).

[54] (D.E. 50-2, Redlined Second Am. Compl., at ¶¶ 104 and 108).

[55] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 93).

[56] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 94–95).

[57] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 96).

express certification theory because Andover expressly certified in the Provider Agreements that it was complying with Medicaid regulations.

Relator's amendments regarding federal regulations are not futile because they also set forth facts supporting a violation of the False Claims Act through the implied certification theory. By submitting *per diem* claims, Andover represented that it provided its residents with periodic physician visits that included personal physician visits every thirty days for the first ninety days after admission and at least once every sixty days after that.[58] According to the amended complaint, Andover made specific representations that particular services were provided and knowingly failed to disclose noncompliance with the federal regulations.[59] These misrepresentations that it was in compliance with federal regulations were material to the Government's payment decisions,[60] and Mr. Armstrong therefore alleges sufficient facts regarding Andover's liability under the implied certification theory to a violation of the False Claims Act. The second amended complaint sufficiently alleges a claim against Andover under the False Claims Act and ties the facility to Drs. Jain and Kipiani's scheme.

Defendants additionally argue that the entire complaint is futile under the statute of limitations. The Court, in its discretion, will not consider this argument in connection with its review of the motion to amend.[61] Defendants had withdrawn their motion to dismiss without prejudice in order to meet and confer with Relator on a proposed amended complaint. The parties

---

[58] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 99, 101–04).

[59] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 108, 111-117).

[60] (D.E. 50-2, Redlined Second Am. Compl., at ¶ 118).

[61] *See In re Aetna UCR Litigation*, Civ. No. 07-3541, 2015 WL 3970168, at *8 (D.N.J. June 30, 2015).

will have an opportunity to fully brief this issue when Defendants file their dispositive motion, whether in a motion to dismiss or a motion for summary judgment at the conclusion of discovery. Both parties addressed the statute of limitations issue only briefly in their briefs. The Court notes that neither party addressed whether the issues currently before the U.S. Supreme Court in *Cochise Consultancy, Inc. v. U.S., ex re. Billy Joe Hunt*,[62] regarding the applicability of the statute of limitations when the United States does not intervene, have any impact on the instant case. Because there does not appear to be sufficient briefing on the statute of limitations issue, the Court declines to engage in a futility analysis of this issue at this juncture; the parties may raise it in any anticipated motion to dismiss.[63]

Regarding undue delay and prejudice,[64] the Court does not find either, as Mr. Armstrong's motion to amend was filed in a timely manner in response to Anderson's motion to dismiss. This case had been administratively terminated for three years pending the United States' determination as to whether to intervene in the case, and fact discovery has not yet concluded.

An appropriate Order follows:

**ORDER**

**IT IS** on this Thursday, February 14, 2019,

---

[62] *See* https://www.supremecourt.gov/docket/docketfiles/html/public/18-315.html.

[63] *See In re Aetna UCR Litigation*, Civ. No. 07-3541, 2015 WL 3970168, at *8 (D.N.J. June 30, 2015); *Strategic Envtl. Partners, LLC v. Bucco,* 2014 WL 3817295 at *2 (D.N.J. Aug. 1, 2014)

[64] (D.E. 50-3, Defs.' Opp'n, at 9).

**ORDERED**, that Plaintiffs' motion to file an amended complaint, D.E. 52 is **GRANTED and** shall be filed within ten (10) days. Responses shall be filed in accordance with Federal Rule of Civil Procedure 15(a)(3).



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/14/2019 4:11:17 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
File