## GeyerGorey LLP
2006 Berwick Drive
Cinnaminson, NJ 08077
(202) 374-0312
brad@geyergorey.com

June 28, 2019

**VIA ECF**
Hon. Steven C. Mannion
United States Magistrate Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

        **Re:**    **U.S.A. ex rel., Armstrong v. Andover, et al.**
              **Civil Action No. 12-3319-SDW-SCM**
              **Letter Brief in Support of Motion to Compel**

Dear Judge Mannion:

    Pursuant to the Court's instruction last week, please accept this letter brief on behalf of Relator, Kenneth Armstrong ("Relator") in support of Relator's motion to compel the defendant to answer the interrogatories (Document 81). Relator's underlying action is a *qui tam* matter brought under the Federal and two (2) statue qui tam statutes.[1] The Defendants are as follows: two large nursing homes, Andover Subacute and Rehab Center One, Inc. ("Andover One"), Andover Subacute and Rehab Center Two, Inc. ("Andover Two") (together "Andover"); and, two doctors, Dr. Sanjay Jain ("Jain") and the late Dr. Hooshang Kipiani ("The Estate of Kippiani") (together Defendant Doctors). Fact discovery is by and large concluded, expert discovery should be completed in September and a final pre-trial conference and trial should be scheduled thereafter.

    In most, if not all false claim cases, the Relator must not only prove fraudulent conduct but also show a defendant's claims for payment made to and paid for by the Government related

---

[1] The Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the False Claims Acts of New Jersey and New York.

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 2 of 6

to that conduct.  The same recipe applies here: In this matter, Relator worked as a director of security at the Andover nursing homes and has obtained relevant evidence of the Defendant's fraudulent conduct.  However, since Relator, like most Relators, did not work in or have access to the Defendant's billing (*i.e.*, the claims for payment) the Relator has sought to obtain these claims through discovery.  Here, as in most healthcare fraud cases, there are two types of claims for payment:  1) Medicare claims – here, claims submitted by the Defendant Doctors to the Federal government for patient visits that were not actually performed; and, 2) Medicaid claims – here, claims submitted by Andover to the State of New Jersey for patient nursing home care that was not eligible for payment (collectively "Claims").  The interrogatories that are the subject of this motion seek information regarding the Defendants' Claims submitted to and paid by the Government ("Claims Interrogatories").  This issue can and should easily be resolve by stipulation; after all, Relator is seeking information about the Defendant's own claims submitted to and paid for by the Government from 2009 to 2012.  However, the Defendants refuse to stipulate, hence the need to conduct the extensive discovery into this issue and ultimately the need for this Motion.

In the absence of a stipulation and anticipating the need for Claims in a False "Claims" Act case, the Relator has sought various ways to obtain Claims evidence.  In addition to the Claims Interrogatories, the Relator also sought a Rule 30(b)(6) Corporate designee of the person most knowledgeable as to all Claims submitted by Andover to and paid for by the Government. ("Claims Designee").  Further, Relator also issued subpoenas to the Government for Defendants' Claims for payment made to and paid for by the Government from 2009 to 2012. Relator worked

with the Government employees charged with managing Claims data [2] and eventually received from Government the Defendants' claims data in the form of several Microsoft Excel files that contained a list of the Defendant's Claims; these included other details such as the date of service, the patient identifiers, the date of payment and the amount paid.  In total, their Claims data contained just over 14,000 rows of Claims for Andover patients and 7,200 rows of Claims for Defendant doctors.  At trial, this data will be the evidence of the Claims in this False Claims Act matter wherein the potential damages and statutory penalties could be in the hundreds of millions of dollars ($100,000,000's). Further, the basis of Relator's expert's report will be these Claims.

After receiving the Claims data, Relator sought a stipulation from the Defendants as to its accuracy.  The Defendants have refused; and one need not be clairvoyant to anticipate at trial a form over substance "foundation" objection to the Claims evidence. As such, Relator pursued two parallel paths.  One, the Relator sent the Claims Interrogatories that are the subject of this Motion, which in aggregate, asks the Defendant to identify all Claims submitted to and paid for by the Government. The Claims Interrogatories even invite the Defendants to reference the Claims data received from the Government as its responses.

Two, Relator also took the 30(b)(6) deposition of Andover's Claims designee on June 4, 2019. Andover Claims Designee is Mr. Craig Goodstadt, Esq. who is also Andover's long time General Legal Counsel and Compliance Office.  During that deposition, Mr. Goodstadt, Esq. was both unprepared and unable to answer any question asked about the number of Claims Andover

---

[2] As the Court is likely aware, in healthcare the day of paper billing and paper claims are long gone, and Claims are now electronic (*i.e.*, data).

submitted and the amount of payments Andover received for those Claims. For example, on the first question of substance, here was the exchange:

> Q. Did you go and look to see how many claims that Andover submitted for per diem services to New Jersey Medicaid between 2009 and 2012?
> A. Again, it would be hundreds. I don't know the exact amount.
> Q. And what about the dollar value of those claims, per diem claims submitted by Andover to New Jersey Medicaid during that time frame?
> A. I don't have an estimate. It would be in the hundreds of thousands, if not millions of dollars.
> Q. Do you know generally how much on an annual basis Andover is getting paid from New Jersey Medicaid?
> A. I don't know the amount.

(See Exhibit 2 - Deposition page(s) 10-13.)

Additionally, although the 30(b)(6) Deposition Notice required the Claims Designee to bring any and all documents that would identify the Claims submitted to and paid by the Government, Mr. Goodstadt, Esq. did not bring any documents and therefore could not reference any documents about claims during the Claims deposition. Worse, Mr. Goodstadt claimed that in preparing for his 30(b)(6) deposition, he had not been told of the existence of Andover Claims data received from the Government subpoena and, as such, never reviewed the excel file that listed the Defendants' Claims. (See Exhibit 2 - Deposition page(s) 13-14.) When next asked, "Do you think that [looking at the Claims data] would have been something important to answer questions about the claims that Andover submitted to the State of New Jersey? He answered: "Perhaps." (See Exhibit 2 - Deposition page(s) 13-14.) Notwithstanding, Mr. Goodstadt being advised of the Claims data existence agreed that he had "no reason to dispute" the accuracy of the data. (See Exhibit 2 - Deposition page(s) 65.) [3]

---

[3] During the deposition the Claim Designee was also invited by Relator's counsel to take some time after the deposition and actually look at the Claims data and advise Relator's counsel as to whether he thought the Claims data did or did not accurately list the Claims submitted by the Defendants. Thus far, Relator has not heard again from the Claims Designee.

Lastly, Andover's continued protestations that it is now a "defunct" entity and as such, has no basis to answer the Claims interrogatories is disingenuous at best, and untrue at worst. First, during the 30(b)(6) deposition, the Claims Designee revealed that Andover used electronic Claims software and billing vendor during the 2009 through 2012 timeframe. According to the Claims Designee, the vendor was either Dee-Dee Corporation or Woodland (See Exhibit 2 - Deposition page(s) 40-41.) Not surprisingly, Mr. Goodstadt did not note either when listing those with whom he spoke to prepare for the 30(b)(6) deposition. Also, as noted in the Geyer Declaration attached, there are numerous computers, discs, hard drives, and servers at Andover's storage facility – none of these had been connected to a power source. (Geyer Declaration at para. 4) which could have been reviewed and which presumably contain billing data. Worse still for the Defendant's "defunct" contention is that one of the electronic billing vendors, Dee-Dee Corporation was owned by Andover's president, Carla Kipiani, and its office is at the same location as the Claims Designee – yet the Claim Designee made no effort to review any electronic Claim data from Ms. Kipiani's corporation, Dee-Dee.

Finally, although healthcare claims are now almost universally electronic, Andover also printed and maintained voluminous paper copies of its Claims billing records. At the deposition, when asked about whether Andover had any records which would identify Claims, the Claims Designee stated it did not "*other than*" boxes that were in its own storage facility. (See Exhibit 2 - Deposition page(s) 64-65 .) Again, reviewing these Claims boxes of documents was not part of the Mr. Goodstadt, Esq.' preparation for the 309(b)(6) deposition about the Claims.

Relator's motion for answer to the Claims Interrogatories should be granted. Relators have taken all reasonable steps to obtain the evidence of the Defendant Claims in order to pursue this False "Claims" Act case and have in fact obtained the Claims data from the Government.

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 6 of 6

Relator would use this Claims data at trial, but Defendants will undoubtedly object based on foundation grounds. As such, if the Defendants maintain their refusal to stipulate that such data are true and accurate as to its own Claims, then the Court should require answer to the Claims Interrogatories. While in order to answer the interrogatories, Mr. Goodstadt, Esq. may regrettably have to "roll up his sleeves," go into the storage rooms and pull out the paper Claims copies from the boxes or perhaps fire back up one or more of the Andover or Dee-Dee Corporation computers that contain the Claims data, such efforts would be unnecessary if Defendants would stipulate to the Claims data already received from the Government.

                                        Respectfully submitted,

Dated: June 28, 2019                /s Bradford L. Geyer
                                             GeyerGorey LLP
                                             2006 Berwick Drive
                                             Cinnaminson, NJ 08077
                                             (202) 374-0312
                                             Counsel for Relator