## GeyerGorey LLP
2006 Berwick Drive
Cinnaminson, NJ 08077
(202) 374-0312
brad@geyergorey.com

June 28, 2019

**VIA ECF**
Hon. Steven C. Mannion
United States Magistrate Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

> **Re:** **U.S.A. et al., ex rel., Armstrong v. Andover, et al.**
> **Civil Action No. 12-3319-SDW-SCM**
> **Motion to Compel Answer to Deposition Questions**

Dear Judge Mannion:

Pursuant to the Court's instruction last week, please accept this letter brief on behalf of Relator, Kenneth Armstrong ("Relator") in support of Relator's motion to compel the defendant to answer deposition questions. Relator's underlying action is a *qui tam* matter brought under the Federal and two (2) state qui tam statutes.[1] The Defendants are as follows: two large nursing homes, Andover Subacute and Rehab Center One, Inc. ("Andover One"), Andover Subacute and Rehab Center Two, Inc. ("Andover Two") (together "Andover"); and, two doctors, Dr. Sanjay Jain ("Jain") and the late Dr. Hooshang Kipiani ("The Estate of Kippiani") (together Defendant Doctors).

This Motion relates to two depositions taken this month: First, the June 3, 2019 deposition of Mrs. Carla Kipiani; and, second, the June 4, 2019 30(b)(6) deposition of Andover's Claims designee on June 4, 2019. Andover Claims Designee is Mr. Craig Goodstadt, Esq. who is also Andover's long time General Legal Counsel and Compliance Officer. During each deposition, Andover's counsel objected to a line of questioning asserting that the questions were not relevant and/or constituted harassment. The parties were unable to resolve Andover's objections and the witnesses were improperly instructed not to answer. The issue was raised with the Court during

---

[1] The Federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the False Claims Acts of New Jersey and New York.

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 2

the telephonic status conference held on Friday, June 21, 2019 at which time the Court instructed Relator to file a motion to compel on or before June 28, 2019.

As will be discussed further below, the Federal Rules of Civil Procedure do not permit counsel to instruct their witness not to answer questions at deposition absent three exceptions that do not exist here.  The questions posed were relevant to disputed issues in this case and in no way constituted harassment of the witness.

## RELATOR'S ALLEGATIONS

Federal law mandates that all patients in nursing facilities, such as Andover, "must remain under the care of a physician." 42 C.F.R. § 483.30.  More specifically, nursing home residents are required to be seen every "30 days for the first 90 days after admission, and at least once every 60 days thereafter." 42 C.F.R. § 483.30(c)(1).  Being "seen" means that the resident's attending physician "must make actual face to face contact with the resident."  Interpretative Guidelines §483.30(c).  The State of New Jersey similarly requires Medicaid beneficiaries to "be under the supervision of a New Jersey licensed attending physician" and that the resident "be visited and examined every 30 days" for the first 90 days "by the physician personally, or a physician assistant or nurse practitioner." N.J.A.C. 8:85-2.3(a)(1), (c)(5)(i)(1).  Thereafter, "the interval between visits may be extended for up to 60 days . . . with written justification." *Id.*

Based on Relator's personal observations, as supplemented by statements made to him by other Andover employees, Relator alleges that Dr. Kipiani and other physicians at Andover submitted false claims certifying that they performed patient visits as required by federal and state law when they did not, but still filled out medical charts as if they had done so.  Further, Relator alleges that Andover submitted false "per diem" claims for Medicaid residents who were supposed to be under the care and supervision of Dr. Kipiani and Dr. Jain.  The New York and New Jersey Departments of Health determine Medicaid per diem rates based, in part, on the individual facility's costs certified by the facility in the annual cost reports that it submits to the Center for Medicare and Medicaid Services ("CMS").

## DEPOSITION OF CARLA TURCO KIPIANI[2]

Mrs. Kipiani testified as follows concerning issues relevant to this motion.

---

[2] Citations are to the page and line numbers of excerpts taken from the deposition transcript of Mrs. Kipiani- relevant pages are attached as Exhibit 1 to Geyer Declaration.

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 3

Ownership and operation of Andover One and Andover Two has been within the Turco family since at least the 1960s.  (18:11 to 19:5)  Andover One and Two served approximately 700 patients at any one point in time.   (51:14-18)   Mrs. Kipiani was a licensed nursing home administrator, and formerly owned and held the position of President of Andover One and Andover Two.  (11:3-17; 15:6-8; 47:5-17; 63:9-12)  Mrs. Kipiani's husband, Dr. Hooshang Kipiani, had been employed by Andover from 1995 through 2004, and thereafter, worked as an independent contractor and served as the Medical Director to both facilities.  (55:2 to 58:1; 75:8-12)

Among Mrs. Kipiani's responsibilities was to oversee the administrators for both facilities and to ensure that Andover's patients were being seen by a New Jersey licensed physician at least once per month.  (14:9-12; 52:19 to 53:2)  Mrs. Kipiani testified that she worked at the facilities from approximately 11:00 a.m. to 4:00 p.m.  (49:9 to 50:15)

In her capacity as the licensed nursing home administrator, Mrs. Kipiani reviewed and signed certified cost reports submitted to CMS.  (63:19-24)  According to the cost reports for 2009, Andover paid Mrs. Kipiani an administrator fee of $234,000 that same year.  (64:10-19; 67:4-17)

During the deposition,  Mrs. Kipiani was asked:

Q. How many entities do you have an interest in?
MR. BERMAN: Objection. I'm going to direct the witness not to answer.
MR. MININNO: Okay.
MR. BERMAN: The case is about the provision of medical services. You're asking about the witness's personal financial investments.
MR. MININNO: You're directing her not to answer?
MR. BERMAN: I am. I am directing her not to answer. Unless you turn back to the issues in dispute, I'm going to direct her not to answer. We can get the judge on the line.
Q. The question was the number of entities in which you have an interest.
MR. BERMAN: Objection. You're harassing the witness. I'm directing her not to
Answer.

(70:22-71:13)

A moment later, Counsel conferred on the record and then agreed as follows:

MR. MININNO: So, Mark, in response to your objection. What I intend to do, and you can put this on this record, I don't want to -- I'm going to have standing questions, you have a standing
objection. I intend to go through each of the cost reports, number one.
Number two, I also intended to inquire as to each of the entities she has an affiliation with to see -- and then see the amount of time she spent with those. I think it's highly relevant, not that we have a relevance objection here, to see if the woman perhaps was spreading

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 4

herself too thin and was not spending enough time at Andover. So I think that's a good
question.
MR. BERMAN: I'm not going to have her answer any of those questions. I don't think it's
relevant at all.
MR. MININNO: Okay. So you're directing her not to -- pretending I'm asking all of
those questions, you're going to direct her not to answer those?
MR. BERMAN:  Correct.

(76:13-77:9)

### DEPOSITION OF 30(b)(6) CLAIMS DESIGNEE[3]

Relator served a 30(b)(6) deposition notice in November 2018 and April 2019.
Summarizing those Notices, the Relator sought:

The Person(s) most qualified and knowledgeable and able to describe the procedure each
Defendant followed in (a) submitting claims to and (b) receiving payment from the (i)  to
identify all claims that were submitted by to the Medicare … [and] New Jersey or New
York Medicaid […] from 2009 through 2012.  (See Geyer Declaration Exhibit X and Y)

Mr. Craig Goodstadt, Esq. Andover's long time General Legal Counsel and Compliance
Office acted as the designee.

At the end of the deposition, there were numerous objections and instructions not to
answer.  (70:10-78:3). For the reasons set out below, the Court should Order answers to these
deposition questions.

### LEGAL ARGUMENT

### I.    THE QUESTIONING OF THE DEPONENTS WAS
### RELEVANT TO THE ISSUES IN THIS MATTER.

"Unless otherwise limited by court order the scope of discovery" permits parties to "obtain
discovery regarding any nonprivileged matter that is relevant to any party's claims or defense…."
Fed. R. Civ. P. 26(b)(1).  Importantly, "[r]elevant information" under the rule does not mean that
the information must be admissible at trial so long as "the discovery [sought] appears reasonably
calculated to lead to the discovery of admissible evidence."  *Id.*

---

[3] Citations are to the page and line numbers of excerpts taken from the deposition transcript of
Mr. Goodstadt, Esq. -  relevant pages are attached as Exhibit 2 to Geyer Declaration attached.

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 5

The number of corporate entities in which Mrs. Kipiani and/or Dr. Kipiani held an equity interest or were otherwise involved is also highly relevant to the issue of whether the Andover Defendants provided its residents with adequate health care required by federal and state laws. Information about each business entity Mrs. Kipiani is affiliated with, the business purpose of each entity, and the level of Mrs. Kipiani's involvement by way of duties and responsibilities is highly relevant to whether the Andover Defendants complied with federal and state regulations concerning required patient visits and payments made by Medicare and Medicaid for falsely billed patient visits. As owner, President, and the licensed nursing home administrator for the Andover facilities, the time Mrs. Kipiani allocated to her other business interests is highly relevant to whether Mrs. Kipiani was able to ensure that Andover's patients were being seen by a New Jersey licensed physician at least once a month as require by federal and state law. This information is also relevant to whether Andover submitted false bills to Medicare and Medicaid as Mrs. Kipiani signed off on certifications that were submitted to governmental regulatory authorities.

In any event, and as previously discussed, the issue of relevancy does not preclude counsel from asking questions about Mrs. Kipiani's other businesses because these questions are without question reasonably calculated to lead to the discovery of admissible evidence. Moreover, an objection as to the relevance of a question is not a proper basis to instruct the witness not to answer a question.

Further, as to the Corporate Designee, the questions directly inquired whether Andover would or would not submit claims and demand payment from the government under different sets of facts. While the questions were in the form of a hypothetical or asking the witness to assume facts were true, such form was proper. The entire premise of this case is neither complex nor Top Secret. Both Mrs. Kipiani and Mr. Goodstadt agree that New Jersey and Federal regulations require that nursing home care be under the supervision of a physician who sees the patient every thirty (30) days.[4] At trial, the Relators intend to prove that for many Andover patients, the nursing home care was *not* under the supervision of *any* physician as is required by law. Since Andover does not concede this fact, the only way to ask these questions is to have the Deponent assume counter-factual – one the Relator intends to prove. As the Corporate designee, it is totally proper to ask

---

[4]Deposition of Kipiani at (12:2) and 30(b)(6)Deposition of Goodstadt (34:7-13) at Exhibit AA and BB

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 6

whether Andover would or would not properly submit claims for services that were not in accordance with the law.

## II.   IT WAS IMPROPER TO INSTRUCT DEPONENT  NOT TO ANSWER QUESTIONS POSED AT HER DEPOSITION.

Federal Rules of Civil Procedure permit attorneys to ask any question at a deposition, provided the question does not invade a recognized privilege, exceed the limits of a court's order, or is made in bad faith for the sole purpose of annoying or embarrassing the deponent.  Pursuant to Fed. R. Civ. P. 30(c)(2), objections should be noted on the record in a concise nonargumentative manner, "but the examination still proceeds; the testimony is taken subject to any objection."

There are only three occasions when the Federal Rules of Civil Procedure will allow counsel to instruct a witness not to answer a question during a deposition.  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  *Id.* (emphasis added)*; see also Otsuka Pharmaceutical Co., Ltd. V. Apotex Corp.*, 310 F.R.D. 256, 260 (D.N.J. 2015).    Rule 30(d)(3)(A) permits a party to move to terminate or limit the deposition if the deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  This necessarily requires Defendants to show that disclosure of information in response to the questions posed by Relator's counsel "will work a clearly defined and serious injury to the party seeking closure.'"  *Otsuka Pharmaceutical Co., Ltd.*, 310 F.R.D. at 259 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

The provisions of Rule 30(c) are obviously intended to expedite and to simplify the discovery process."  *International Union of Elec., Radio and Machine Workers v. Westinghouse Electric Corporation*, 91 F.R.D. 277, 278 (D.C. 1981).  It is not proper to instruct a witness to not answer a question even if the question is not relevant.  "'[T]he better practice is for attorneys to note their objections, but permit their clients to answer questions leaving resolution of the objection to pre-trial or trial.  This approach conserves the parties' or witnesses' time and money, as well as judicial resources, and expedited the trial of the lawsuit.'"  *Id.* at 279 (quotation omitted).

It is respectfully submitted that this Court should reject any assertion by the Andover Defendants that Realtor's counsel's questioning Mrs. Kipiani about her business interests constitutes harassment. As previously discussed, Relator's questions about Mrs. Kipiani's business

Hon. Steven C. Mannion, U.S.M.J.
June 28, 2019
Page 7

interests is relevant to the claims and defenses asserted in this action. If Andover's counsel believed that Mrs. Kipiani's deposition was being conducted in bad faith, or because Mrs. Kipiani was being harassed, "he should have suspended the deposition at that juncture, stated his complaints on the record, and applied immediately to the court for protection under Rule 30(d)." *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 643 (N.D. IN. 1991) (citations omitted); *see also Redwood v. Dobson*, 476 F.3d. 462, 467-68 (7th Cir. 2007) (observing that counsel repeatedly violated the rule by telling the witness "not to answer yet never presenting a motion for a protective order").

Courts may order that "a person who impedes, delays, or frustrates the fair examination of the deponent" pay "the reasonable expenses and attorney's fees incurred by any party" to resume the deposition. Fed. R. Civ. P. 30(d)(2). The Andover Defendants did not move for a protective order because Relator's questioning of Mrs. Kipiani was not made in bad faith nor intended to annoy or embarrass her.[5]

For these reasons, an order compelling Andover Defendants to produce Mrs. Kipiani and Mr. Goodstadt (or another 30(b)(6) designee) for completion of the depositions and awarding Relator reasonable expenses and attorneys' fees to continue such depositions is warranted.

Respectfully submitted,

/s Bradford L. Geyer
GeyerGorey LLP
2006 Berwick Drive
Cinnaminson, NJ 08077
(202) 374-0312
Counsel for Relator

---

[5] To the extent there is any additional doubt, the deposition was video recorded and a copy can be supplied to the Court.

{00741837.DOCX v.1}