HARTMANN DOHERTY
ROSA BERMAN & BULBULIA
Limited Liability Company    Attorneys At Law

433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201.441.9056
f: 201.441.9435
www.hdrbb.com

New York Office
800 Third Avenue, 28th Floor
New York, New York 10022
t: 212.344.4619

Short Hills Office
830 Morris Turnpike, 3rd Floor
Short Hills, New Jersey 07078
t: 973.467.1325

June 28, 2019

**VIA ECF**

Hon. Steven C. Mannion
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

> Re: **U.S. ex rel. Kenneth W. Armstrong v. Andover Subacute & Rehab Center Services One, Inc., et al.**
> Civil Action No. 12-3319

Dear Judge Mannion:

This firm represents Defendants Andover Subacute & Rehab Center Services One, Inc., Andover Subacute & Rehab Center Services Two, Inc., and the Estate of Dr. Hooshang Kipiani in the above-captioned matter.

Relator obtained certain electronic Medicare/Medicaid claims datasets in response to subpoenas to state and federal agencies (the "Claims Datasets"). Rather than authenticate the Claims Datasets himself, Relator has twice asked Defendants to effectively stipulate that the Claims Datasets are an accurate record of the claims that Defendants actually submitted to Medicare/Medicaid for reimbursement. Relators first sought this stipulation in their April 12, 2019 interrogatories, and sought it again during the June 21, 2019 deposition of Defendants' 30(b)(6) witness. Defendants refused to stipulate to the accuracy of the Claims Datasets on both occasions.

During the June 21, 2019 telephonic joint status conference, Relator raised the issue with the Court. The Court directed the parties to brief the issue. Please accept this letter brief in opposition to Relators' continued efforts to obtain a stipulation regarding the accuracy of the Claims Datasets.

> **I.    Defendants Cannot Stipulate to the Accuracy of the Claims Datasets**

On April 12, 2019, Relator served eight interrogatories requesting that Defendants identify all claims submitted by Dr. Kipiani and the Andover Defendants to Medicare/Medicaid from 2009 to 2011. (*See* Exhibit A to the Declaration of Mark A. Berman, dated June 28, 2019.)[1] The interrogatories included the following instruction: "(Note, you may reference the [Claims Datasets] file as your answer.)." Relator asserts that the purpose of the interrogatories was to have

---

[1] Relators submitted these interrogatories months after the November 23, 2018 deadline set out in the Court's Scheduling Order. (Dkt. No. 47.) Defendants have objected to these interrogatories as out of time.

Defendants "authenticate [their] own claims to Medicare and Medicaid." (Dkt. No. 79 at 1.) In truth, Relator seeks a sweeping stipulation as to the accuracy of the Claims Datasets—data that Relator did not prepare, did not approve, and cannot reasonably be asked to authenticate now.

Relator's interrogatories call on Defendants to produce three years of their Medicare/Medicaid claims—of which there are presumably thousands per year for each Defendant—that were submitted seven to ten years ago. Relator's requests are not only unduly burdensome, they are impossible. As Relator recognizes, the Andover Defendants sold their operations years ago and have been non-operating entities ever since. The Andover Defendants have not had employees since the sale of their operations. Even if Defendants could find a former employee who was familiar with Defendants' billing, it would be completely unreasonable to expect that former employee to be able to identify and authenticate thousands of claims, all between seven and ten years old.

In the alternative, Relators ask Defendants to rely on the electronic datasets provided by Medicare/Medicaid and stipulate that they constitute an accurate compilation of the claims Defendants actually submitted to Medicare/Medicaid for reimbursement—a central issue of fact in this case. Relator obtained the Claims Datasets from state and federal agencies; they are not records created or maintained by Defendants. Many of the datasets have thousands of entries per year for each Defendant. Furthermore, Defendants are unaware of who the custodian of the datasets are, who had access to the datasets, or if the datasets were ever manipulated, and Relator has not disclosed that information to Defendants. For many of the same reasons Defendants were unable to furnish claims information in response to Relator's interrogatories, Defendants are unable to confirm the accuracy and completeness of the Claims Datasets.

Relator is essentially asking Defendants to either (i) conduct Relator's investigation for him by reviewing and cross-referencing thousands of data entries or (ii) blindly stipulate to an essential issue of fact in the case. Defendants are under no obligation to do either. Rule 33(b)(1)(B) requires a corporation responding to interrogatories to "furnish the information available to the party." Although Rule 33(b)(1)(B) may, under certain circumstances, require a corporation to use reasonable efforts to gather responsive information beyond its personal knowledge, the Rule does not require Defendants to do Relator's investigation for him. *See, e.g.*, *United States v. Kramer*, 1992 U.S. Dist. LEXIS 7651 at *12-14 (D.N.J. Mar. 31, 1992).

I. **Rule 30(b)(6) Does Not Require the Andover Defendants' Designee to Undertake the Impossible Task of Familiarizing Himself with the Claims Datasets**

During the June 21, 2019 telephonic joint status conference with the Court, Relator's counsel told the Court that he attempted to have Andover's 30(b)(6) designee, Craig Goodstadt, authenticate the Claims Datasets during his deposition, but that the witness could not. Relator took the position that the Andover Defendants' designee did not sufficiently educate himself on the topics to be discussed during the deposition. Relator sets a standard that no Rule 30(b)(6) witness could meet.

Rule 30(b)(6) requires a corporation to prepare its designated witness to testify as to "matters known or reasonably available" to the corporation. Although the language of the Rule

Hon. Steven C. Mannion
June 28, 2019
Page 3

"clearly contemplates information beyond the present domain of the noticed entity," *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011), it certainly does not go so far that it would require the Andover Defendants' designee to granularly familiarize himself with the thousands of claims submitted many years ago, which span over three years, and which were submitted by employees that have not been in Defendants' employ for years.

Information is "reasonably available" to a corporation under Rule 30(b)(6) when it is under the corporation's control. *See In re Benicar (Olmesartan) Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 137839, at *10-11 (D.N.J. Oct. 4, 2016). If, for example, a corporation "controls information possessed by a non-party foreign affiliate", *see id.*, or if the information is held by an affiliate or sister corporation, *Sanofi-Aventis*, 272 F.R.D. at 394-95, that information would be "reasonably available" for the purpose of Rule 30(b)(6).

Here, the information sought by Relator clearly was not within Defendants' control. During Mr. Goodstadt's deposition, Relator's counsel elicited testimony regarding the difficulty of attempting to educate himself on the Andover Defendants' Medicare/Medicaid claims:

> **Q. Okay. And have you looked at those claims that Andover submitted for those patients prior to today?**
>
> A. Generally, yes.
>
> **Q. And when you say "generally," what do you mean?**
>
> A. It would be, it would be meaningless for me to look through each individual claim that we submitted for certain patients. It was challenging for me to obtain as much information as I did because at this time, as you are aware, Andover Subacute and Rehab Center Services One, Inc. and Andover Subacute and Rehab Center Services Two, Inc. no longer have any employees. It's a non-operational entity. So for me to go and receive information about the billing practices, I had to go to people that no longer work at the facility, no longer have access to the records, and get answers. So to the best of my ability, I have a knowledgeable overview of how we billed.

(*See* the Deposition Transcript of Craig Goodstadt (the "Goodstadt Dep."), attached as Exhibit B to the Declaration of Mark A. Berman, dated June 28, 2019, at 10:17–11:11.)

As Mr. Goodstadt testified, he went beyond his obligation under Rule 30(b)(6) and made extensive efforts to educate himself, including (i) contacting a former Andover employee who might have been familiar with the Andover Defendants' Medicare/Medicaid claims from the relevant period (Goodstadt Dep. at 12:14–13:13), (ii) reviewing emails, files, regulations, and billing forms (*Id.* at 20:15–21:4), and (iii) specifically searching for emails related to the Andover Defendants' Medicare/Medicaid claims (*Id.* at 23:3–23:10).

Hon. Steven C. Mannion
June 28, 2019
Page 4

      Relator's made an impossible request of Defendant's Rule 30(b)(6) witness, and now they fault him for not complying.

## **CONCLUSION**

      For the foregoing reasons, Defendants should not be required to authenticate or otherwise stipulate to the accuracy of the Claims Datasets.

      Sincerely,

      s/ Mark Berman

      Mark A. Berman

Enclosures

  cc:  All Counsel of Record (via ECF)