# Exhibit B

```
               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                CIVIL ACTION NO.: 12-cv-03319

UNITED STATES OF AMERICA and   :
the STATES OF NEW JERSEY and   :
NEW YORK, ex rel. KENNETH W.   :
ARMSTRONG,                     :         VIDEOTAPED
                               :         DEPOSITION OF:
        Plaintiff and,         :
        Relator,               :         CRAIG GOODSTADT
                               :
        vs.                    :
                               :
ANDOVER SUBACUTE AND REHAB     :
CENTER SERVICES ONE, INC.;     :
ANDOVER SUBACUTE AND REHAB     :
CENTER SERVICES TWO, INC.;     :
ESTATE OF DR. HOOSHANG KIPIANI :
and DR. SANJAY JAIN,           :
                               :
        Defendants.            :
-------------------------------:
```

Tuesday, June 4, 2019

Hackensack, New Jersey

B E F O R E:

JOSEPHINE M. BIAGINI, a Certified Court Reporter and Notary Public of the State of New Jersey, License No. 1133, at the law offices of HARTMANN, DOHERTY, ROSA, BERMAN & BULBULIA, LLC, 433 Hackensack Avenue, Hackensack, New Jersey, commencing at 10:00 a.m., pursuant to Notice.

```
            JOSEPHINE M. BIAGINI & ASSOCIATES
               Certified Court Reporters
                      PO Box 71
               Wyckoff, New Jersey 07481
                    (201) 446-7576
               Email: JBiaginiCSR@aol.com
```

A P P E A R A N C E S:

    MININNO LAW OFFICE
    By:   JOHN MININNO, ESQ.
        475 White Horse Pike
        Collingswood, New Jersey  08107
        (856) 833-0600
        John@Min-Law.com
           Counsel for the Plaintiffs


    FLORIO, PERRUCCI, STEINHARDT & CAPPELLI, LLC
    By:   PADRAIG P. FLANAGAN, ESQ.
        235 Broubalow Way
        Phillipsburg, New Jersey  08865
        (908) 878-0131
        Pflanagan@fioriolaw.com
           Co-Counsel for the Plaintiffs


    HARTMANN, DOHERTY, ROSA, BERMAN &
    BULBULIA, LLC
    By:   MARK A. BERMAN, ESQ.
        65 Route 4 East
        River Edge, New Jersey  07661
        (201) 441-9056
        Mberman@hdrbb.com
           Counsel for the Defendants,
           Andover Subacute and Rehab Center
           Services One, Inc., Andover Subacute
           and Rehab Center Services, Two, Inc.
           and Estate of Dr. Hooshang Kipiani


    HOAGLAND LONGO, MORAN, DUNST & DOUKAS, LLP
    By:   BENJAMIN H. HAFTEL, ESQ.
        40 Paterson Street
        New Brunswick, New Jersey  08903
        (732) 545-4717
           Counsel for the Defendant,
           Dr. Sanjay Jain



A L S O   P R E S E N T:

    George Gilch - Videographer



1       Q.      Okay. Just starting with that,
2  between 2009 and 2012, how many claims did Andover
3  submit to New Jersey Medicaid for a patient who was
4  receiving any service, that is physician visits, from
5  Dr. Kipiani?
6  A.      The actual visit or any service?
7       Q.      The question is how many claims did
8  Andover submit to New Jersey or its fiscal
9  intermediary from 2009 to 2012 for a patient who was
10 receiving any service from Dr. Kipiani?
11 A.      There would be hundreds.
12      Q.      Hundreds of claims?
13 A.      Hundreds of claims for services for people
14 that were at the facility in which Dr. Kipiani
15 performed a service, not for the actual service, but
16 for those patients.
17      Q.      Okay. And have you looked at those
18 claims that Andover submitted for those patients prior
19 to today?
20 A.      Generally, yes.
21      Q.      And when you say "generally," what do
22 you mean?
23 A.      It would be, it would be meaningless for me to
24 look through each individual claim that we submitted
25 for certain patients. It was challenging for me to

1  obtain as much information as I did because at this
2  time, as you are aware, Andover Subacute and Rehab
3  Center Services One, Inc. and Andover Subacute and
4  Rehab Center Services Two, Inc. no longer have any
5  employees.  It's a non-operational entity.
6          So for me to go and receive information about
7  the billing practices, I had to go to people that no
8  longer work at the facility, no longer have access to
9  the records, and get answers.  So to the best of my
10 ability, I have a knowledgeable overview of how we
11 billed.
12         Q.     Okay.  I appreciate that.  I
13 understand that.  Let me make it more specific because
14 you said for services.  In this question I'm more
15 interested in the claims that Andover submitted for
16 per diem services.  Do you understand that?
17 A.     Yes.
18         Q.     Did you go and look to see how many
19 claims that Andover submitted for per diem services to
20 New Jersey Medicaid between 2009 and 2012?
21 A.     Again, it would be hundreds.  I don't know the
22 exact amount.
23         Q.     And what about the dollar value of
24 those claims, per diem claims submitted by Andover to
25 New Jersey Medicaid during that time frame?

1  A.     I don't have an estimate.  It would be in the
2  hundreds of thousands, if not millions of dollars.
3         Q.     Do you know generally how much on an
4  annual basis Andover is getting paid from New Jersey
5  Medicaid?
6  A.     I don't know the amount.
7         Q.     Okay.
8  A.     Millions.
9         Q.     You say millions.  Is it tens of
10 millions, hundreds of millions, less than?
11 A.     Not hundreds of millions, but in the millions.
12        Q.     In the tens of millions?
13 A.     I don't -- I can't give that estimate.
14        Q.     Who would be in the best position to
15 tell us the number of claims that Andover submitted to
16 New Jersey -- strike that -- number of per diem claims
17 that Andover submitted to New Jersey Medicaid during
18 that time frame?
19               MR. BERMAN:  Objection to form.
20 A.     Probably the head of billing at that time.
21        Q.     And who is that person?
22 A.     Stacey Courter.
23        Q.     Courter?
24 A.     Courter.
25        Q.     How do you spell that?  I'm sorry.

1  A.     C-O-U-R-T-E-R.
2       Q.     Do you know where Stacey currently
3  works?
4  A.     She currently works at Building Two under the
5  new, with the new operators.
6       Q.     Okay, thanks.
7              Did you speak with Stacey Courter in order to
8  be prepared to answer questions regarding the number
9  of per diem claims Andover submitted to New Jersey
10 Medicaid?
11 A.     Yes.
12      Q.     When did you speak with her?
13 A.     Several times over the past month.
14      Q.     Are you aware in this case that we
15 have subpoenaed from the State of New Jersey and its
16 fiscal intermediary, Medicaid, per diem claims to
17 Medicaid that Andover submitted and we provided them
18 to your counsel?  Are you aware of that?
19 A.     No, I'm not aware of that.
20      Q.     And I take it from that answer you
21 didn't look at the claims that we received from the
22 State of New Jersey -- strike that -- Andover's per
23 diem claims that we received from the State of New
24 Jersey?
25 A.     No, I didn't.

* * *

1 going back to 15?
2 A.     I'm going back to page Exhibit 4 of 7, your
3 definition of Andover, means "Defendants Andover
4 Subacute and Rehab Center One, Inc. and Andover
5 Subacute and Rehab Center Two, Inc."  Those names are
6 incorrect.  It would be Andover Subacute and Rehab
7 Center Services One, Inc. and Andover Subacute and
8 Rehab Center Services Two, Inc.
9        Q.     Okay, fair enough.  But you had no --
10       You were under the impression you were going
11 to give testimony on behalf of the entity I defined.
12 You knew it to be the entity that was the facility
13 entity.  Correct?
14 A.     The operational entities, yes.
15       Q.     Thanks.  Fair enough.
16       Can you tell me what you did to prepare for
17 this deposition?
18 A.     I reached out to several former employees; I
19 looked through various e-mails; I looked through
20 various files; I reviewed general Medicaid, New Jersey
21 Medicaid and New York Medicaid billing regulations; I
22 reviewed Medicare regulations; I reviewed the forms
23 that were required for billing.  I believe that's all.
24       Q.     Okay.  Which former employees did you
25 reach out to in order to prepare for this deposition?

Case 2:12-cv-03319-SDW-SCM   Document 93-3   Filed 06/28/19   Page 11 of 13 PageID: 974

21

1  A.    I spoke to, like I previously stated, Stacey
2  Courter with regards to billing issues.  I spoke to
3  Mary Pignitiello who was our human resource person
4  with regards to our handbook.
5       Q.    Could you spell that for Josephine?
6  A.    Pignitiello, I believe, is
7  P-I-G-N-I-T-I-E-L-L-O.
8       Q.    You said you spoke with her regarding
9  your handbook.  What do you mean, what handbook?
10 A.    Employee handbook.
11      Q.    Okay, thanks.  Who else?
12 A.    I spoke to Sonia Velmonte who is the
13 administrator of -- I guess we're using Building One
14 and Building Two as terms.
15      Q.    Yes.
16 A.    So she would be the administrator of Building
17 One.  I spoke to --
18      Q.    Before you go there, what did you and
19 Ms. Sonia Velmonte speak about?
20 A.    Generally doctors' visits, more specifically
21 Dr. Kipiani.
22      Q.    Did you speak about claims and the
23 process of submitting claims?
24 A.    She would not be involved with that.
25      Q.    Okay, fair enough.



```
 1          Q.      Anything else that you can recall?
 2    A.    Other than speaking with our counsel, no.
 3          Q.      We know we're not going to go there.
 4          You mentioned e-mails.  What e-mails did you
 5    have to review?
 6    A.    I went back to see if there were any prior
 7    communications with anyone from the facility with
 8    regards to Medicare claims and Medicaid claims.
 9          Q.      And did you find any?
10    A.    No.
11          Q.      You said you looked back at some
12    files.  Just generally, without going chapter and
13    verse, what files did you go back to look at?
14    A.    Our employee handbook, so anything to do with
15    corporate policies that I would have written up or
16    that pertained to me as general counsel and compliance
17    officer of the company.  I reviewed various files with
18    regards to subpoenas that we had received with regards
19    to Dr. Freeman, and then just the files would be,
20    would be to peruse the boxes of files that I believe
21    you had decided to copy in the course of discovery.
22          Q.      You brought something up.  I guess we
23    should get it on the record.
24          So at some point in time, if not still, you
25    acted as general counsel of the Corporate Defendants,
```