NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES OF NEW JERSEY and NEW YORK, *ex rel.* KENNETH W. ARMSTRONG,<br><br>Plaintiffs and Relator,<br><br>v.<br><br>ANDOVER SUBACUTE & REHAB CENTER SERVICES ONE, INC., et al.,<br><br>Defendants. | Civil Action No: 12-03319-SDW-SCM<br><br>**OPINION**<br><br>September 26, 2019 |

**WIGENTON**, District Judge.

Before this Court is Andover Subacute & Rehab Center Services One, Inc., Andover Subacute & Rehab Center Services Two, Inc. (collectively, "Andover"), and Estate of Dr. Hooshang Kipiani's (collectively "Defendants")[1] Motion to Dismiss Kenneth W. Armstrong's ("Relator") Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. ("Rule") 9(b) and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367 and 31 U.S.C. § 3732(a). Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**.

---

[1] Dr. Sanjay Jain ("Dr. Jain") is also a defendant in this action but has not joined this motion. (D.E. 74-1 at 1.)

1

## I. BACKGROUND AND PROCEDURAL HISTORY

### A.

This action arises from allegations that Defendants knowingly submitted false or fraudulent claims for healthcare services to the United States and to the States of New Jersey and New York. (SAC ¶ 2.) The Andover defendants are for-profit corporations that operated long-term care facilities in New Jersey. (*Id.* ¶¶ 12-19; D.E. 74-1 at 22.) Beginning at least as early as August 2002, and continuing until his death in October 2012, Dr. Hooshang Kipiani ("Dr. Kipiani") was the medical director and an attending physician at Andover.[2] (SAC ¶¶ 20-22.) Andover employed Relator beginning in August 2002, first as a patient advocate and later as director of security, terminating his employment in October 2011. (*Id.* ¶¶ 10-11.)

Relator brought suit on June 1, 2012, as a *qui tam* relator on behalf of the United States and the States of New Jersey and New York, alleging violations of the Federal False Claims Act ("FCA") (Counts One - Five), the New Jersey False Claims Act ("NJFCA"), N.J.S.A. § 2A:32c-3(a)-(c) (Counts Six - Ten), and the New York False Claims Act ("NYFCA"), N.Y. State. Fin. Law § 189(a)-(b) (Counts Eleven and Twelve). (D.E. 1.) Relator filed the initial complaint under seal. On September 30, 2013, the United States applied for an Order staying the action so that it could decide whether to intervene, and the case was administratively terminated. (D.E. 8, 9.)[3]

In June 2017, the United States intervened with respect to defendant Dr. Boris Freyman but declined to intervene as to the other defendants. (D.E. 13.) This Court reopened the case in

---

[2] Dr. Jain and Dr. Boris Freyman were also attending physicians at Andover during the relevant times. (SAC ¶ 23.)

[3] Relator filed his First Amended Complaint under seal on October 6, 2016. (D.E. 12.)

September 2017. (D.E. 17.)[4, 5] Relator filed the SAC on March 18, 2019, and Defendants subsequently filed the instant Motion to Dismiss. (D.E. 70, 74.)

**B.**

The SAC alleges that Drs. Kipiani and Jain fraudulently billed Medicare and Medicaid for physician services that were not provided (or were not provided as described) to Andover patients. (SAC ¶ 38.) The fraudulent billing began as early as 2004, but no later than 2009, and continued until (1) October 2012 for Dr. Kipiani; and (2) until 2013 or 2015 for Dr. Jain. (*Id.* ¶¶ 38, 67-68, and 89.) The SAC alleges that Dr. Kipiani and Dr. Jain did not visit their patients, except in medical emergencies, despite federal regulations for Medicare and Medicaid reimbursement requiring that residents at nursing facilities like Andover "must be seen" every "30 days for the first 90 days after admission, and at least once every 60 days thereafter." (*Id.* ¶¶ 40, 73-87.)[6] "Must be seen" means that the physician "must make actual face-to-face contact with the resident."

---

[4] At that time, the Court also ordered the Complaint and First Amended Complaint unsealed. (D.E. 17.)

[5] Relator moved to amend his First Amended Complaint, and Magistrate Judge Mannion granted the motion on February 14, 2019. (D.E. 50, 65.) The Court gives no weight to Relator's argument that Judge Mannion's opinion granting Relator leave to file the SAC under Rule 15(a)(2) constitutes "law of the case." (D.E. 76 at 11-15.) While Judge Mannion's reasoning is helpful to the Court, a magistrate judge's decision with respect to a motion for leave to amend does not preclude a district court from making a *de novo* determination with respect to the propriety of a Rule 12(b)(6) dismissal. *See, e.g.*, *Care Envtl. Corp. v. M2 Techs., Inc.*, Civ. No. 05-1600, 2006 WL 148913, at *8 n.9 (E.D.N.Y. Jan. 18, 2006) ("Plaintiff argues that the 'law of the case doctrine' mandates that the claims added by the amended complaint [] not be dismissed because in permitting plaintiff to amend the complaint the Magistrate Judge ruled that the amendment was not 'futile.' However, the decision to grant a request to amend a complaint and the decision to deny a motion to dismiss are two different issues, and one cannot constitute the law of the case for the other.").

[6] The SAC cites 42 C.F.R. § 483.40(c)(1) as the applicable regulation regarding the frequency of physician visits. However, 42 C.F.R. § 483.40 was re-designated as 42 C.F.R. § 483.30 effective November 28, 2016. *See* Medicare and Medicaid Programs; Reform of Requirements for Long-Term Care Facilities, 81 FR 68688-01, 2016 WL 5687478 at *68861 (Oct. 4, 2016). Citations in this opinion will be to the updated section number.

3

(*Id.* ¶ 40 (quoting Department of Health & Human Services - Centers for Medicare and Medicaid Services, Appendix PP State Operations Manual, § 483.30(c) ("Interpretive Guidelines")[7].)

Similarly, the SAC alleges that Andover knowingly submitted (or caused to be submitted) false claims to Medicaid for per diem care of residents at its long-term care facilities. (SAC ¶ 37.) According to the SAC, these claims were not eligible for reimbursement because Andover was in violation of the applicable federal (and corresponding state) regulations. (*Id.* ¶¶ 91, 108-117.) The SAC specifies that Robert Mayer, Andover's director of operations, was personally aware that Drs. Kipiani and Jain were not seeing their patients as required by law in order to receive Medicaid reimbursement. (*Id.*) Nonetheless, Mr. Mayer authorized Andover to submit per diem claims to Medicaid for these patients, and even went so far as to instruct "nursing supervisors to [systematically] pull specific charts so that Dr. Kipiani and Dr. Jain [c]ould write documentation in the chart[s] as if they were seeing the patient[s]." (*Id.* ¶¶ 113, 116, and 125.) Andover's alleged scheme began no later than 2009 and continued until 2015, when Dr. Jain became aware of the U.S. Government's investigation. (*Id.* ¶ 119.)

The SAC further alleges that Defendants, in order to be reimbursed by Medicare and Medicaid, included with each claim for payment a fraudulent certification verifying that they were furnishing accurate information regarding the services provided.[8] Dr. Kipiani and Dr. Jain coded

---

[7] The current Interpretive Guidelines are available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/GuidanceforLawsAndRegulations/Downloads/Appendix-PP-State-Operations-Manual.pdf. Older versions have substantially identical language. *See, e.g.*, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R5SOM.pdf (Nov. 19, 2004) ("**Interpretive Guidelines §483.40(c)**[:] '**Must be seen**' means that the physician must make actual face-to-face contact with the resident." (emphasis in original)).

[8] For example, for reimbursement from Medicare and Medicaid, healthcare providers must submit form CMS 1500, detailing the precise services provided. The form contains the following provision:

> SIGNATURE OF PHYSICIAN OR SUPPLIER … I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished-incident to my professional service by my employee under my immediate

some of these claims to indicate that they were for services provided in connection with the initial and periodic physician visits that are federally mandated for nursing facility residents, even though these visits did not occur. (*Id.* ¶¶ 128-129.) Specifically, Relator alleges that Dr. Kipiani submitted 294 Medicare claims for "physician visits" between January 4, 2001 and September 6, 2012 and Dr. Jain submitted 3,119 Medicare claims for "physician visits" between January 1, 2011 and December 31, 2013. (*Id.* ¶¶ 142-144.) Andover's management had "full knowledge" that its director of admissions was submitting false claims for patient visits pursuant to Dr. Kipiani's instructions. (*Id.* ¶¶ 140, 168.) Despite this knowledge, Andover certified that it was complying with federal and state regulations when it submitted per diem claims to New Jersey and New York Medicaid for Dr. Kipiani and Dr. Jain's patients. (*Id.* ¶¶ 130-136.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

---

personal supervision … Notice: This is to certify that the foregoing information is true and accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds and any false claims, statements or documents or concealment of a material fact will be prosecuted under the applicable Federal and State Law.

(SAC ¶¶ 120-124.) Similar certifications were signed for claims that were submitted to New Jersey and New York Medicaid. (*Id.* ¶¶ 130-132, 134-136.)

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing *Iqbal*). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Claims for fraud are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 301 n.9 (3d Cir. 2011), *abrogated on other grounds*, *Universal Health Serv., Inc. v. U.S.*, 136 S. Ct. 1989, 2001-04 (2016) ("*Escobar*"). The rule requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b). In order to satisfy the Rule 9(b) standard in the FCA context, Relator "must provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. Describing a mere opportunity for fraud will not suffice. Sufficient facts to establish a plausible ground for relief must be alleged." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157–58 (3d Cir. 2014) (quotation marks and citation omitted). *See also id.* at 156 ("In *United*

*States ex rel. Wilkins...*, we noted that we had never 'held that a plaintiff must identify a specific claim for payment at the pleading stage of the case to state a claim for relief.'").

**III. DISCUSSION**

**A.**

The FCA "prohibits the submission of false or fraudulent claims for payment to the United States and authorizes *qui tam* actions, by which private individuals may bring a lawsuit on behalf of the government …." *Foglia v. Renal Ventures Mgmt., LLC*, 830 F. Supp. 2d 8, 14 (D.N.J. 2011) (citing *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011)). The FCA provides, in relevant part:

> [A]ny person who –
>   (A) knowingly[9] presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>   (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>   (C) conspires to commit a violation of subparagraph (A), (B)…
> is liable to the United States of America for a civil penalty . . . .

31 U.S.C. § 3729(a)(1).

"There are two categories of false claims under the FCA: a factually false claim and a legally false claim." *Wilkins*, 659 F.3d at 305 (citation omitted). "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id*. (citation omitted). Legally false claims may be express or implied. *Id.* at 305. "Under the 'express false

---

[9] "[T]he terms 'knowing' and 'knowingly' -- (A) mean that a person, with respect to information -- (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud[.]" 31 U.S.C. § 3729(b)(1).

7

certification' theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *Id.* (citation omitted). Under the "implied false certification" theory, an entity is liable if it "makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." *Id.* (citation omitted).

For legally false claims, plaintiffs must plead that the regulation at issue is material. *Escobar*, 136 S. Ct. at 2004 n.6. For the FCA, a regulation is material if it is "so central to the provision" of services that the Government would "not have paid the[] claims had it known of the[] violations." *Id.* at 2002-04 (describing the materiality standard as "rigorous" and "demanding"); *see also U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 492 (3d Cir. 2017) (recognizing the "heightened materiality standard" set out in *Escobar*).

**B.**

The SAC raises five FCA claims,[10] alleging that Defendants submitted legally false claims under both express and implied false certification theories. "To establish a *prima facie* claim under 31 U.S.C. § 3729(a)(1), a plaintiff must show that: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004) (citations omitted). As there appears to be no dispute that claims were submitted for payment, this Court must determine whether the SAC sufficiently pleads that the claims submitted were false or fraudulent and submitted knowingly by

---

[10] These claims allege that Drs. Kipiani and Jain violated 31 U.S.C. § 3729(a)(1) subparagraph A (Count One) and subparagraph B (Count Two), that Andover violated subparagraph A (Count Four) and subparagraph B (Count Five), and that Drs. Kipiani and Jain and Andover together violated subparagraph C (Count Three).

8

Dr. Kipiani (Counts One - Three) and Andover (Counts Three – Five).[11] As noted above, because Relator alleges legally false claims, this Court must also determine whether the SAC sufficiently pleads that the applicable regulations were material to the Government's decision to pay the submitted claims.

### 1. Dr. Kipiani (Counts One and Two)

Here, Relator pleads that Dr. Kipiani seldom visited residents' rooms, but systematically documented and submitted claims for hundreds of "physician visits" that never happened. (*Id.* ¶¶ 50-85, 142-143.) Relator attaches a "complete" list of these claims, including dates, amounts, and patient names. (*Id.* ¶ 143 (referencing D.E. 106).)[12] The pleadings create "a strong inference that [false] claims were actually submitted." *Foglia*, 754 F.3d at 157-58. Furthermore, Relator's allegation that Dr. Kipiani fraudulently coded claims to indicate that they were for services that were never provided sufficiently pleads that Dr. Kipiani knowingly submitted the false or fraudulent claims. (SAC ¶¶ 128-129.)

---

[11] Count Three raises a conspiracy count against all Defendants.

[12] Although the SAC states that lists of submitted claims were attached to the SAC itself, (SAC ¶¶ 142-144), the lists were filed later, on September 5, 2019. (D.E. 106.) In ruling on a motion to dismiss, a court may consider a "document integral to or explicitly relied upon in the complaint ... without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). This Court will consider D.E. 106, because it is explicitly relied upon by the SAC.

## 2. Andover (Counts Four and Five)

Similarly, Relator alleges that Andover expressly certified, in both provider agreements and payment request forms,[13] that it was complying with Medicaid regulations,[14] but in fact submitted per diem claims for care of residents who were never actually visited by a doctor, in violation of applicable laws and regulations.[15] (*Id.* ¶¶ 91, 96-107.) Relator alleges that Andover's director of operations, who was aware of these laws and regulations, instructed nursing supervisors to pull specific charts so that Drs. Kipiani and Jain could timely document patient visits that he knew did not occur. (*Id.* ¶¶ 86, 113.) The same director then authorized Andover to submit per diem claims to Medicaid for those patients. (*Id.* ¶¶ 116, 125.) Taken together, these allegations are sufficient to plead that Andover knowingly submitted false or fraudulent claims.

## 3. Dr. Kipiani and Andover (Count Three)

The conspiracy allegations of Count Three "need only satisfy the notice pleading standards of Rule 8." *United States ex rel. Rahimi v. Zydus Pharm. (USA), Inc.*, Civ. No. 15-6536, 2017 WL 1503986, at *12 (D.N.J. Apr. 26, 2017) (citation omitted), *on reconsideration in part sub nom. Rahimi v. Zydus Pharm. (USA) Inc.*, Civ. No. 15-6536, 2018 WL 515943 (D.N.J. Jan. 23, 2018)

---

[13] Since *Escobar*, it is no longer relevant to the materiality analysis whether a certification was made with respect to a requirement for participation (*e.g.* a provider agreement) or a requirement for payment. The relevant inquiry is the materiality of the requirement to the Government's decision to pay the claim. *See Petratos*, 855 F.3d at 489 ("[A] misrepresentation is not material 'merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment … [or because] the Government would have the option to decline to pay if it knew of the defendant's noncompliance.'" (citing *Escobar*, 136 S. Ct. at 2003)).

[14] For example, in the Provider Agreement that Andover signed with the U.S. Department of Health and Human Services to receive per diem payments from Medicaid, Andover agreed to "conform to the provisions of section 1866 of the Social Security Act and applicable provision in 42 CFR." (SAC ¶¶ 93-94.) Andover also signed a similar Provider Agreement with the N.J. Department of Health and Senior Services, agreeing to "comply with all applicable State and Federal Medicaid laws and policies, and rules and regulations promulgated pursuant thereto …." (*Id.* ¶ 95.)

[15] These laws and regulations include 42 C.F.R. § 483.30 (SAC ¶ 97); § 483.30(a) (*id.* ¶ 98); § 483.30 Interpretive Guidelines (*id.* ¶ 99); § 483.30(b) (*id.* ¶ 100); § 483.30(c)(1) (*id.* ¶ 102); and N.J.A.C. § 8:85-2.3 (*id.* ¶ 107).

(granting reconsideration in part on other grounds). "The [SAC] easily provides such notice, by alleging the general composition of the conspiracy, its broad objectives, and [Defendants'] general roles in the conspiracy." *See Rahimi*, 2017 WL 1503986, at *12 (citations omitted). (*See, e.g.*, SAC ¶¶ 91, 108-117, 125, 140, and 168.) Accordingly, these allegations are sufficient to plead that Andover conspired with Drs. Kipiani and Jain to submit false or fraudulent claims.

### 4. Materiality

Because the SAC alleges legally false claims, Relator must also plead that the regulations requiring periodic physician visits were material to the Government's decision to pay the submitted claims. *See Escobar*, 136 S. Ct. at 2004 n.6. Here, Relator identifies specific federal statutes and regulations which mandated that Andover provide residents with face-to-face physician visits at prescribed minimum intervals, (SAC ¶¶ 100, 102-104, and 107), a requirement which Relator alleges is a core component of Medicaid's legal framework for long-term care nursing facilities. (*Id.* ¶¶ 100-104, 107, and 118.) That these visits were material to the Government's decision to pay the claims is reflected by Defendants' systematic efforts to document patient visits that never occurred. (*Id.* ¶¶ 113, 116, and 125.) Accordingly, Relator has sufficiently pleaded materiality.[16]

As Relator has sufficiently pleaded that Defendants knowingly submitted false or fraudulent claims, *see Zimmer*, 386 F.3d at 242, and that the regulations at issue were material, *see*

---

[16] That the United States continued to make payments to Andover after Relator filed his complaint does not change the Court's analysis. The SAC does not allege that the Government continued to pay the claims *knowing* that the physicians were not supervising their patients as required. Whether the Government continued to pay such claims "without requiring a restatement or revision or taking other regulatory action is a matter for [summary judgment or] trial. Accordingly, it does not factor into the materiality analysis at this stage." *United States ex rel. Streck v. Bristol-Myers Squibb Co.*, Civ. No. 13-7547, 2018 WL 6300578, at *16-17 (E.D. Pa. Nov. 29, 2018) (quotation marks and citations omitted), *clarified on denial of reconsideration*, 370 F. Supp. 3d 491 (E.D. Pa. 2019); *see also United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 906-07 (9th Cir. 2017).

11

*Escobar*, 136 S. Ct. at 2004 n.6, this Court will deny Defendants' Motion to Dismiss Counts One - Five.[17,18,19]

## C.

Relator's remaining claims arise under the NJFCA and the NYFCA. These state statutes mirror the FCA and require the same showings. *See, e.g.*, *United States v. Loving Care Agency, Inc.*, 226 F. Supp. 3d 357, 363-64 (D.N.J. 2016) ("[t]he language in the NJFCA is nearly identical to the federal statute and thus requires the same showings"); *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 286 (E.D.N.Y. 2016) (concluding that the NYFCA "'is closely

---

[17] Defendants' Motion to Dismiss Relator's claims under the doctrine of laches is also denied as that equitable doctrine is not applicable to a suit in law, where a statute of limitations applies instead. *See Fox v. Millman*, 210 N.J. 401, 419 (2012) (citing *United States v. Mack*, 295 U.S. 480, 489 (1935)). Nor can the doctrine of laches be applied against the United States. *See United States v. Summerlin*, 310 U.S. 414, 416 (1940).

[18] Defendants' Motion to Dismiss Relator's FCA claims against the Estate of Dr. Kipiani on the basis that Relator failed to comply with N.J.S.A. § 3B:22-4 is also denied. The statute requires a "creditor of the estate" to "present their claim to the personal representative of the decedent's estate in writing and under oath … within nine months from the date of the decedent's death." (D.E. 74-1 at 23-24.) The United States is exempt from N.J.S.A. § 3B:22-4 under the Supremacy Clause of the U.S. Constitution. *See Summerlin*, 310 U.S. at 416 (citing U.S. Const. art. VI, cl. 2).

[19] Defendants' Motion to Dismiss Relator's FCA claims as barred by a six-year statute of limitations, 31 U.S.C. § 3731(b)(1), is also denied. Under § 3731(b):

> [An FCA suit] may not be brought—
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
> whichever occurs last.

The Supreme Court recently held that the limitations period in § 3731(b)(2) is available in a relator-initiated suit in which the Government has declined to intervene. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510-12 (2019). The Complaint was filed on June 1, 2012, (D.E. 1), which is presumably "the date when facts material to the right of action [we]re known or reasonably should have been known by the official of the United States charged with responsibility to act." Because Relator was not an "official of the United States," *see Cochise*, 139 S. Ct. at 1514, he was entitled to bring suit under the FCA for any conduct occurring after June 1, 2002. Because the SAC only alleges conduct beginning in 2004, (SAC ¶ 38), Relator's FCA claims are not time-barred.

modeled on the federal FCA'" and "imposes liability for 'knowingly mak[ing] a false statement or knowingly fil[ing] a false record'" (citations omitted)); *Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 381 (S.D.N.Y. 2015) ("[w]hen interpreting the NYFCA, New York courts rely on federal FCA precedent"). Because Relator has sufficiently pleaded his FCA claims, this Court will also deny Defendants' Motion to Dismiss Counts Six - Twelve.[20, 21]

IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**.  An appropriate order follows.


    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**


Orig:    Clerk
cc:      Steven C. Mannion, U.S.M.J.
         Parties

---

[20] Any claims under the NJFCA for actions that occurred prior to the enactment of that statute on March 13, 2008 are time-barred, and Defendants' Motion to Dismiss such claims is granted with prejudice. *See Loving Care*, 226 F. Supp. 3d at 370-71 (noting that the NJFCA is not retroactive). There is no such limitation on claims under the NYFCA. *See U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 540-41 (S.D.N.Y. 2014) (noting that the NYFCA was enacted on April 1, 2007 and applies retroactively).

[21] Defendants argue, (D.E. 74-1 at 23-24), and Relator does not dispute, that Relator did not present a claim to Dr. Kipiani's Estate in accordance with N.J.S.A. § 3B:22-4. Defendants' Motion to Dismiss Relator's NJFCA and NYFCA claims against the Estate of Dr. Kipiani is therefore granted with prejudice.